## CLARK *vs.* CONDIT and others.†

1. A deed absolute on its face, intended and made only as security for a debt, is a mortgage. When the defeasance or agreement showing that it is such security is in writing, the statute declares it to be a mortgage, and requires it to be registered as such.

2. An equity of redemption is a right or estate in lands, and cannot be released or conveyed except by writing. No verbal agreement will convert a mortgage into an absolute deed. Whether a surrender and cancellation of a written defeasance would, doubted.

3. If a mortgage was given in the form of an absolute deed, and the defeasance withheld from the records for the purpose of misleading and delaying the mortgagor's creditors, the right of redemption will not thereby be lost. In such case, the aid of the court is not asked to enforce a fraudulent instrument. The fraud, if any, is in the deed not in the defeasance which the complainant claims to enforce according to its legal effect. The defeasance is honest as between the parties, and was not to injure creditors.

4. A power to sell mortgaged premises for the payment of the mortgage debt, given to the mortgagee by the mortgage, is a valid power. It is liable to great abuse, and the exercise of it will be jealously watched. But sales under it, fairly made, will not be set aside.

---

* Decree affirmed, *post* 575.

† CITED *in Phillips* v. *Hulsizer*, 5 *C. E. Gr.* 314; *Crane* v. *Decamp*, 6 *C. E. Gr.* 417.

*Mr. T. Runyon,* for complainant.

*Mr. J. W. Taylor,* for defendants.

THE CHANCELLOR.

The complainant, John H. Clark, on the thirtieth day of December, 1859, owed John J. Searing about $6000, to secure which he had conveyed to him ten tracts of land in the city of Newark, by a deed absolute on its face, taking from him a separate defeasance. Searing wanted his money. The complainant owed the defendant, Condit, and proposed to borrow money from him to pay off Searing, and offered to him the land held by Searing as security for the amount due to him, and the amount so to be advanced. Condit agreed to advance the money and take a conveyance of the property as security, and to substitute his bonds and mortgages on the property for two bonds and mortgages given by Searing on the same to David Doremus, for debts of Clark, amounting to $9000.

In pursuance of this arrangement, Searing, on the thirtieth day of December, 1859, conveyed the ten tracts to Condit in fee, and Condit gave his bonds and mortgages to Doremus, in place of those of Searing. Clark gave to Condit his promissory note for $9194, payable in two years, with interest at seven per cent.; it being the amount of the debt due from him to Condit, and that due from him to Searing, which Condit had paid. The deed to Condit was absolute on its face, and was recorded as a deed. At the same time, Condit and Clark executed a defeasance under their hands and seals. This recited that the conveyance had been made by Searing to Condit, at the request of Clark, to secure to Condit the payment of the note, and provided that if Clark should pay said note when due, Condit would convey to him the lands free from all encumbrances, except the two mortgages to Doremus. And it was provided that in the meantime Clark should collect the rents and pay the interest to Doremus, and pay for repairs, insurance, taxes, and assess-

ments ; and further, that in case Clark should fail to pay his note at maturity, that Condit should have power to convey the lands, or so much thereof as he might choose, and out of the proceeds pay himself the amount due on his note, and the expenses of sale.

There was, at the time of the conveyance to Condit, a prior mortgage on the premises to Lewis J. Lyons, for $2000, which was not mentioned in, or provided for by the agreement of defeasance, and which Condit alleges was not known to him. This mortgage Condit has paid.

On the sixth day of September, 1861, the complainant sold and conveyed to Condit the tools and implements of his trade, valued at about $1000. This sale was for the same purpose as the conveyance of the land, and it was agreed between the parties, that the written defeasance should apply to this so far as practicable, in the same manner as it did to the land.

Shortly after the deed to him, Condit assumed the control of the property, received the rents, and paid the taxes and the interest on the three mortgages, and other expenses incident to the property. Clark paid neither the principal nor interest on his note when due, nor the interest on the mortgages, insurance, or taxes, as he was bound to do. In 1863 he removed to California, and left Condit in possession and control of the property. Condit retained Clark's note, and Clark retained the defeasance. There was no agreement or understanding, either by parol or in writing, about either being surrendered, or about the equity of redemption of Clark, if he had any, being released or surrendered.

After the note was due, Condit sold four parcels of the property to the other defendants in the cause. In March, 1864, he sold the ninth tract to Sarah E. Bogert, for $1800. In October, 1865, he sold another parcel to Griswold & Sheldon, for $9500. In April, 1866, he sold another parcel to Nicholas Duffy, for $1900, and on April sixteenth, 1866, he sold another parcel to the defendant, Bridget Davis, for $3800. These sales were made at private sale, and without any

notice to the complainant, who was in California. The brother of the complainant, who resided on part of the property, heard of these sales when they were in contemplation and the bargains being made. He requested Condit not to sell for these prices, which he alleged were inadequate; and he gave notice to each of the purchasers, before the sale in each case was complete, that Condit had no right to sell, that the complainant had a claim, and that they would buy litigation. The purchasers completed the sales, relying on Condit's deeds, with warranty.

The defendant, Condit, alone has answered. The other defendants have allowed the bill to be taken as confessed. Condit admits the facts, as above stated, but contends in his answer: First, that this was an absolute deed, and was not subject to redemption after the day for the payment of the note, if the note was not paid: Secondly, that the property conveyed to him was not of any greater value than the mortgage debts upon the same, and the amount due to him on his note; and he alleges in his answer under oath, that at the time of said conveyance to him they were valued by him and the complainant, Searing, at only $20,000, and that both he and the complainant then considered that they could not be sold for sufficient to pay the note and encumbrances, and that the complainant shortly after, in fact, released or surrendered whatever equity of redemption he ever had therein, and abandoned the property to him: Thirdly, that the conveyance was made by the complainant to him in the form of an absolute deed, with a secret unrecorded defeasance, for the purpose of enabling the complainant to delay and defraud his creditors, he being embarrassed and having judgment creditors whose judgments would be liens on the equity of redemption if the security had been given and recorded in the shape of an ordinary mortgage; and that the complainant is not entitled to any relief in a court of equity, in a transaction done to defraud his creditors.

There can be no question but that the deed to Condit from Searing was a mortgage. Any conveyance, though absolute on its face, which is intended and made only as a security for

a debt, is a mortgage.    *Youle* v. *Richards, Saxt.* 534; *Clark* v. *Henry*, 2 *Cow.* 324.

The case is much clearer when the defeasance or agreement showing such intention, is in writing. In such case, such absolute deed is, by the act to register mortgages (*Nix. Dig.* 550, § 4,*) declared to be a mortgage, and required to be registered as such; and the grantee is deprived of all the advantages of the registry acts unless it be so registered, and an abstract of the defeasance registered with it.

There is no proof whatever to sustain the second defence, that the equity of redemption was released or abandoned. The complainant retained his defeasance, and Condit the note. No one act of the complainant is shown, that in any way proves even an intention to release or abandon the right to redeem. The allegation in the answer is not responsive, and proves nothing. Besides, the equity of redemption being a right to real estate, cannot be released or surrendered except by writing. *Browne on Stat. of Frauds,* § 229. No parol understanding or agreement can convert a mortgage into an absolute deed; once a mortgage, always a mortgage, is the well established maxim of equity. Some cases have held that a surrender and cancellation of the writing of defeasance may destroy the right to redeem. But the authority of those cases may be well questioned unless when, as was the case in *Youle* v. *Richards, Saxt.* 534, such cancellation is upon adequate consideration, and accompanied by a receipt in writing signed by the party, showing the intention.

The third defence is, that this conveyance was made to Condit in this form by the complainant to defraud and delay his creditors, and therefore a court of equity will give him no relief against it; and that, although Condit may have been privy to the fraud, yet in such case the maxim *in pari delicto potior est conditio possidentis* will protect him. In the first place, the evidence that it was done for the purpose of delaying creditors is very meagre; it is only the admissions of the complainant in his examination upon the return of an

* *Rev., p.* 706, *sec.* 21.

execution, and these hardly amount to proof of that intent. Besides, if the allegations in the answer of Condit as to the value of the property at that time are true, there was no fraud on creditors. The property was mortgaged for *bona fide* debts, was worth nothing beyond the amount of these debts, and could not have been sold for that amount.

Again, the settled principle is that such conveyances, although void as against creditors, are valid as between the parties to them. 1 *Story's Eq. Jur.*, §§ 371, 425.

It is the conveyance alone that could delay or defeat creditors. That alone could be held void as against them; as between the parties, the complainant could not question it. The defeasance upon which the complainant relies is free from all fraud; it was honest as between the parties; it could not injure creditors, and they could not impugn it. By the effect of it the complainant, in equity, is owner of the land, subject to the liens of Condit; he is the party in *possession* of the title, and would have the advantage of the maxim if it were applicable.

This bill is not to set aside the mortgage as illegal or fraudulent, or for any relief against it; but for permission to pay it off and redeem the property, giving the whole transaction its legal effect.

The defendant, Condit, must then be considered in the light of a mortgagee in possession, after condition broken; that he holds subject to the right of the complainant to redeem; and he is bound to account to the complainant for all the rents and profits received from the property. He is entitled to be allowed for the amount of principal and interest due on the note to him, and to the amounts paid by him upon the mortgages on the land; also, to all amounts paid for taxes, assessments, and repairs.

The complainant will be entitled to redeem the property, both real and personal, upon paying the excess, if any, of the amount allowed to the defendant, Condit, above the amount charged to him; and if the amount charged to Condit exceeds the amount due to him, the complainant will be entitled to a decree for the same, and to a re-conveyance of the property.

A different question arises between the complainant and the other defendants, who have purchased parts of the mortgaged premises from Condit. The defeasance expressly provided that after default in payment of the note to him, Condit might sell the property or any part of it. If such power of sale is valid in equity, these sales, made by virtue of it, cannot be set aside by the complainant, unless fraudulently or irregularly made.

The validity of such power of sale in a mortgage was at first doubted, although there seems to be no case in which sales were held void on that account. The doubt was first raised by some remarks of the court in the case of *Croft* v. *Powel*, *Comyn's R.* 603, and was continued by the observations of Lord Eldon in the case of *Roberts* v. *Bozon*, reported in 1 *Powell on Mort.* 9 *a*, note.

But neither the decision nor the dicta of the court in *Croft* v. *Powel*, when properly considered, are adverse to the validity of such power. And the observations of Lord Eldon are upon the expediency of such powers, which had been lately introduced by some conveyancers, and the abuses that might be practised by mortgagees under them. There is no reason why the absolute owner of the fee should not have the power to authorize any one to sell it for his benefit, except that when given to a mortgagee he might, for his own advantage, abuse the trust. Upon principle, the mortgagor clearly has such power. In New York, it has been acknowledged and regulated by statute since 1774. And the validity of sales made by virtue of such powers is now supported by authorities that place it beyond serious question. 1 *Powell on Mort.* 10 and 12 *a*, note *K*; *Coote on Mortgages* 128 ; *Corder* v. *Morgan*, 18 *Ves.* 344 ; *Clay* v. *Sharpe, Ibid., note, p.* 346 ; *Matthie* v. *Edwards*, 2 *Collyer* 465 ; *Demarest* v. *Wynkoop*, 3 *Johns. C. R.* 144 ; *Eaton* v. *Whiting*, 3 *Pick.* 484 ; *Kinsley* v. *Ames*, 2 *Metc.* 29 ; *Waters* v. *Randall*, 6 *Metc.* 479 ; *Anonymous*, 6 *Madd.* 15.

But these cases also hold, that such sales, especially when made by the mortgagee himself, must be made with care and

regard to the interest of the mortgagor, and in a way to obtain the best price for his property; that when the property sold without such precautions has been sacrificed, or sold materially below its value, the sale will be set aside, or the purchaser be decreed to hold title, subject to the equity of the mortgagor to redeem.

In this case, I find no evidence to sustain the allegations of the bill, that the property sold was sold much below its value at the time of sale. There are in the evidence, appraisements of the value of lots designated by street numbers and by size; but I find nothing by which I can apply any of those valuations to either of the four parcels sold, except in case of the lot sold to Sarah E. Bogert, which is valued at the price that she paid for it.

The sales to these defendants must, therefore, so far as they are concerned, be held to be valid, their titles confirmed, and the injunction as against them dissolved. I incline more to this opinion because the complainant aided in placing the recorded title in such position as would mislead them. Instead of having the transfer to Condit placed on the records as a mortgage, which it really was, it was, contrary to the registry acts, recorded as an absolute deed; and although these purchasers had some notice given to them that the complainant had some claim, they were not informed what that claim was. The best and most absolute title may be assailed by such notice through irresponsible parties; they chose to rely on the representation and warranty of Condit, supported by the absolute conveyance they found upon the record, which, if it was false and deceived them, was placed there in that form by the contrivance of the complainant for the purpose of misleading the public. And if the property was really sold at a sacrifice by Condit, the complainant will be entitled to charge Condit with the amount of his loss.

Condit must account for the amounts received for the sale of the four parcels of property. And although it does not sufficiently appear in the evidence that these sales, or either of them, were made at a sacrifice, yet it does appear that

Condit made these sales in the absence of the complainant, and without notice to him, against the remonstrances of his brother, who represented to him that the prices were below the value; and they were all at private sale, on his own discretion only. The complainant may, therefore, if he desires it, have it referred to the master to inquire whether these sales, or either of them, were below the fair value of the property at the time of sale, and how much. And the defendant, Condit, must be charged, in addition to the price received by him, with the excess of such value above the price. The account must be taken with yearly rests, and interest charged upon balances of principal only at such rests; the receipts, after payment of taxes, assessments, interest, repairs, and insurance, to be first applied to the interest due on the note of the complainant, and the balance, if any, on the principal. The interest must be computed at seven per cent., but in no case must interest be charged upon interest except the interest advanced on the three mortgages.