Cake *v.* Shull.

JOSEPH P. CAKE, appellant,

*v.*

. JACOB F. SHULL, respondent.

1. A deed or bill of sale, absolute on its face, may, in equity, be adjudged a mortgage; and such adjudication may rest on parol evidence, showing the actual intention of the parties at the time of the transaction, that the instru--

Cake v. Shull.

ment should constitute security for the payment of money or for the perform-
ance or non-performance of some other act.

2. To warrant a decree that a writing, absolute on its face, was intended to
operate as a mortgage only, the parol evidence must be clear, unequivocal and
convincing, or the presumption that the instrument is what it purports to be
must prevail.

On appeal from a decree advised by Vice-Chancellor Bird,
who filed the following conclusions:

At the conclusion of the arguments announced in the follow-
ing opinion, I find, in this case, that the complainant, being
indebted upon a promissory note in the sum of $367.43, and
finding himself financially embarrassed so that he was unable to
pay, applied to the defendant, his nephew, Mr. Shull, for aid. I
think the testimony bears me out in the conclusion that Mr.
Cake desired a loan of the defendant, and offered this mining-
property—that is, the stock of the mining-property, as security
for the loan. It is very clear, from the testimony of both par-
ties, that Mr. Shull refused to make any loan at first, and it
may be said that he refused to have anything to do with it until
Mr. Cake visited him two or three times. The defendant, Mr.
Shull, desires to impress the court with the conviction that a
loan was not spoken of at all. The tenor of his answer would
seem to lead me to a different conclusion. Mr. Cake also very
emphatically says, that he did not apply to him for a loan; and
the testimony of Mr. Shull's partner, Mr. Wireback, would seem
to remove the doubt, if there was any, from the mind of the
court upon this subject entirely. If a loan had not been spoken
of, clearly Mr. Wireback, so intelligent a witness as he shows
himself to be, and stating what he remembers with so much dis-
tinctness, would not have been led to the conclusion that he was,
when he said he was, unable to tell whether it was a loan or a
sale. But in legal parlance, it seems to me, independently of
the postal card and the letter, Mr. Wireback gives us such a
statement as to show the court the path of duty very plainly.
Mr. Wireback said, very distinctly, that Mr. Shull had refused
time and again to have anything to do with the matter, stat-

ing that he would not buy this mining-stock out and out, but that he would advance the money to him on an absolute bill of sale of the mining-stock. Now, it is well understood from the books, that if a loan is made, the strong presumption is, that, whatever was given between the parties by way of security for that loan, it remains a loan; in other words, if once a mortgage it is always a mortgage; and to determine whether an instrument be a mortgage or otherwise, great force is always given to the consideration of the question whether the transaction involved a loan or otherwise. And that view of this case aids me materially in determining that Mr. Cake desired a loan. There can be no doubt but that there was a threat upon the part of the holder of the note to offer it for sale, and Mr. Cake undoubtedly supposed it might, in some way, be sacrificed, and that induced him to seek this aid. So that, relying upon what passed in the office, as detailed by Mr. Cake himself, and as the same is very clearly expressed by Mr. Wireback, I can see no other conclusion to be arrived at, in the first instance, than that a loan was talked of. Taking that as a basis and as a·starting point, then there is a fair and definite explanation of Mr. Wireback's further statement that he (Shull) said he would advance him the money if he would make him an absolute bill of sale. In such case, when it appears that the transaction really represented a loan, the court will almost universally declare the instrument given as a security a mortgage, although it be absolute on its face. See *Roddy* v. *Brick, 15 Stew. Eq. 218,* and cases cited.

Now, the postal-card impresses me so strongly in that direction that I cannot relieve my mind from the conviction that Mr. Shull had nothing else in his mind than relief from this loan. It does seem to me that, if he had had in his mind an order of Mr. Cake's to purchase back the stock, he would have ·adverted to it as an offer to buy. I do not understand how he could use any such expression as that which is used in the postal-card, if he had reference to an ordinary transaction of sale and purchase But the letter is still stronger in the same direction. It is said by the defendant's counsel, that Mr. Shull .is a plain

Cake v. Shull.

business-man, and that, when he used the word "redeem," he did not use it in its ordinary, technical sense. Well, the mere fact that Mr. Shull, a plain business-man, uses such a term, shows that he used it for a purpose. How would a plain business-man ever come into the conception of such a term as that—a technical term—if he did not use it in a technical sense? I think it is impossible to get away from the conviction that he used that word in just the sense in which it is commonly understood by those who talk about such things. He used the word "redeem" —showing that Mr. Cake undoubtedly had some right, by an agreement between the parties, to get back the paper and the stock which Mr. Shull held. If it had not been so, Mr. Shull, being a plain business-man, never would have dreamt of using the word "redeem;" if he had reference to some existing agreement, which had its origin after the date of this assignment, he would have said, You promised to buy back; he would not have said in the postal-card, as he did, Relieve me of this by paying the amount due; but he would have asked for the $600 which he promised to pay him at the expiration of a given time. There seems to be no reason why I should hesitate about this matter.

Now, as to the question of costs. The rule of law is very well settled that where a party comes in to redeem, he must pay costs just as he pays costs upon a bill to foreclose, unless the defendant has been guilty of some wrong on his part. In this case the defendant is clearly in the wrong. He not only sold the stock in question for a much larger sum than was due to him, but, when inquired of by Cake, refused to give him any information whatever upon the subject, so that the complainant was obliged to file his bill for a discovery of the facts which the defendant possessed and concealed from Cake. In such case the defendant must pay costs. Having sold the stock, it became his duty to account. Beyond the amount of his loan and interest, the amount in his hands belonged to the complainant.

*Mr. T. E. French* and *Mr. S. H. Grey*, for the appellant.

*Mr. D. S. Pancoast*, for the respondent.

The opinion of the court was delivered by

Dixon, J.

The complainant seeks to have a certain bill of sale, dated May 5th, 1886, made by himself to the defendant, for one-sixth interest in "The Mann Mining Property of North Carolina," adjudged to be a mortgage for the loan of $320, and to obtain a. decree against the defendant for the difference between that sum and $1,692, the price for which the defendant sold the same in October, 1887.

The right of a court of equity to declare a deed or bill of sale,. which is absolute on its face, to be a mortgage, is clear, as is also· the competency of parol evidence to prove the fact.    The question turns upon the actual intention of the parties at the time of the transaction.    *Crane* v. *Decamp, 6 C. E. Gr. 414.*    If that intention was that the instrument should constitute security for the payment of money or the performance or non-performance of any other act, then it is deemed a mortgage; but if a real sale was intended, then it takes effect according to its terms,. even though a contemporaneous right or privilege to purchase· back the property sold was contracted for by the vendor. *Gassert* v. *Bogk, 7 Mont. 585; Conway* v. *Alexander, 7 Cranch· 218; Notes to Thornborough* v. *Baker, 2 Lead. Cas. Eq. 1030..* An *obligation* to repurchase, or any other *duty* resting on the· vendor, by the performance of which the property was to revert to him, would ordinarily be conclusive evidence of a mortgage, while the absence of such obligation or duty, either· expressed or implied, would be indicative of a sale.    *Murray* v. *Riley, 140 Mass. 490; Horn* v. *Keteltas, 46 N. Y. 605.*    In· searching for evidence of intent, the strong probability that parties, who have reduced at least some portion of their bargain, to writing, have fully and intelligently expressed their whole· bargain in that writing, must not be lost sight of; and therefore· it has been rightly said, that, where the writing is in form an absolute conveyance, the parol evidence that it was designed to· operate as a mortgage only must be clear, unequivocal and con--

Cake v. Shull.

vincing, or the presumption that the instrument is what it purports to be must prevail.    *Coyle* v. *Davis, 116 U. S. 108.*

It is necessary, therefore, to ascertain what intention the testimony in this case discloses.

And, *first*, there is the fact that the contemporaneous writing shows an absolute sale, and nothing suggestive of a mortgage.

*Secondly.* The bill of complaint requires the defendant to answer, under oath, whether he did not advance to the complainant the consideration of the bill of sale as a loan, and receive the bill of sale as a security for the repayment of that loan; and the defendant answers, under oath, with a negative, and avers that, on the contrary, no loan was made, and the sale was absolute.

*Thirdly.* It appears that, at the time of this transaction, one Whitney held the complainant's note for $320, and also controlled his interest in the mining-property as security for the note, and was about to sell that interest at auction, under circumstances which rendered the complainant apprehensive that it would not realize enough to pay the note.    Thereupon the complainant obtained from the defendant the amount of money requisite to meet the note, and gave him the bill of sale.    If by this transaction the complainant and defendant intended to create between themselves the same relation as before had subsisted between the complainant and Whitney, the simplest form for so doing would have been to transfer the Whitney note to the defendant; but, on the contrary, that note was canceled and delivered to the complainant, and no evidence of his indebtedness was substituted for it.    Such a marked change in the external aspect of affairs is best explained by a substantial change in the relations of the parties, and strongly indicates that the complainant was no longer a debtor.

*Fourthly.* The oral testimony scarcely preponderates on either side.    The complainant swears to a loan and mortgage, but testifies to his inferences rather than to language used by the parties.    The defendant swears that he refused to make any loan, but consented, after several interviews, to buy.    The defendant's partner, the only other witness who heard the negotiations, corroborates the defendant.

Cake *v.* Shull.

*Fifthly.* There are two postal-cards, written by the defendant to the complainant, one dated December 15th, 1886, the other February 5th, 1887, which indicate a prior agreement that the complainant might redeem the property within a time then expired. But these cards are explained by the defendant, who says, that after the assignment, he agreed that the complainant might buy back the property within a limited period for $500 ; that this offer on his part was a mere gratuity, induced by the same spirit which led him to make the purchase, a desire to befriend the complainant, who was his uncle.

*Lastly.* The price paid is not inconsistent with the idea of a sale. The property was of a speculative character, and cannot be said to have had an ascertainable market value. In May, 1886, the complainant feared that, at public auction, he could not make it bring $320, and only after several efforts did he succeed in getting the defendant, his relative, to take it at that price. For six months afterwards he was unable to find a purchaser for it at an advance over $500; and the fact that, in October, 1887, it was sold for $1,692 is attributed by the defendant to the expenditure of money and labor on the part of those interested in the land, and to a general increase in the market price of mining-property.

Taking all these considerations together, we think they furnish a decided preponderance of evidence in favor of the proposition that the parties really intended a sale, and not a mortgage. Consequently, our opinion is, that the decree below should be reversed, and the bill of complaint should be dismissed.

*Decree unanimously reversed.*