## COLLINS WINTERS

v.

## WILLIAM H. EARL.

1. A deed absolute on its face, executed as a security, will be declared to be a mortgage.

2. The fact that the deed was executed as a security may be proved by parol evidence.

3. The burden of proof in such a case rests on the party alleging that the deed is not what it purports to be on its face.

4. On a bill to redeem the general rule is, that the mortgagor will be required to pay costs, but this rule may be dispensed with when the mortgagee's conduct has been oppressive.

On final hearing on bill and answer and proofs taken orally.

*Mr. Francis J. Swayze* for complainant.

*Mr. Charles M. Woodruff* for defendant.

VAN FLEET, V. C.

The object of this suit is to have a deed absolute on its face declared to be a mortgage. The principle is well established that if a debtor makes a conveyance, absolute on its face, to his

Winters v. Earl.

creditor, as a security for a debt, the deed will be considered in equity to be a mortgage, and the fact that it was executed as a security, and not as an unconditional conveyance, may be established by parol evidence. *Phillips* v. *Hulsizer, 5 C. E. Gr. 308,* and the cases there cited. Any legal means of proof may be used to establish the fact that the deed was executed as a security. In the absence of a written defeasance, the evidence in such cases usually consists of the declarations of the grantee; the relations subsisting between the parties at the time the deed was executed; the retention by the grantor, subsequent to the execution of the deed, of the possession of the land and the exercise of dominion over it, in making improvements and repairs, paying taxes and the like; the value of the property compared with the consideration actually paid or allowed; an understanding that the consideration should be repaid and the payment of interest on it subsequent to the date of the deed. *Sweet* v. *Parker, 7 C. E. Gr. 453.* The burden of proof is, of course, on the party claiming that the deed is not what it purports to be on its face, and in order to prevail his proof must outweigh that of his adversary.

The deed in question was made by the complainant to the defendant on the 8th day of June, 1889, and conveyed about eight acres of rough land, with a small house, the whole being then worth not much over $500. The complainant was a laborer, who occasionally drank to excess, and the defendant was the proprietor of a saloon and restaurant. When the deed was made the land was in process of foreclosure. The person who was prosecuting the foreclosure suit had purchased the mortgage for the purpose of foreclosing it. He wanted to get rid of the complainant as a neighbor, and he foreclosed the mortgage in order that he might buy the land at the foreclosure sale and then expel the complainant from it. The complainant knew that this was the purpose of the foreclosure, and as was natural, desired, with strong desire, to defeat it. Through a third person he applied to the defendant for help. This person testifies, that he asked the defendant, on behalf of the complainant, to furnish the money required to take up the mortgage, and

that the defendant, after two or three interviews, promised to furnish sufficient money to help the complainant "out of the scrape." The complainant says that when the deed was made, it was distinctly understood between the defendant and himself, that the deed was to stand as a security, the same as a mortgage, and that when he repaid the defendant the money advanced to take up the mortgage, he was to have his property back, and that the defendant said, all he wanted, in the meantime, was the interest on his money. The complainant further says, that when he signed the deed the defendant promised to give him "articles" to show that he held the deed as a security, but that the defendant has never performed his promise. The defendant, on the contrary, denies that the deed was executed as a security, but he admits that he made a promise to reconvey. When first asked to state the bargain under which the deed was made, the defendant said: "There was no bargain, only that he didn't want Mr. French to have the property." (Mr. French was the complainant in the foreclosure suit.) Subsequently the defendant said, he told the complainant when the deed was executed, that whenever he wanted to sell the property he would give him the first chance to buy, and that the complainant replied, he would give as much as anybody. This is the position in which the evidence of the parties themselves puts the case. The evidence of the complainant shows that the deed was executed as a security, while the defendant says it was executed as an unconditional conveyance, and that the only right the complainant retained rested on a parol promise that he might repurchase the property provided he would pay as much as any other person.

But there is other evidence tending to show the real character of the deed. Two different persons applied to the defendant, about a year after the execution of the deed, to purchase the land. To the first he said, that he could not sell then because the complainant had a right to redeem the land, but he would let the applicant know when the complainant's right to redeem had expired. On cross-examination this witness somewhat changed his evidence. On being asked whether the defendant did not say that the reason he could not sell was because he had

promised to convey to the complainant, and that he had the
preference, he replied that the defendant did say so ; but he sub-
sequently testified, that while he could not repeat the words used
by the defendant, the fact they conveyed to his mind was, that
the complainant had a right to have his property on repaying,
within a time limited, the money which the defendant had ad-
vanced.    The other applicant made an offer of $500 for the
property.    The defendant had paid $366.    He declined this
offer, saying, that he had promised to hold the property for the
complainant and he was going to do it.    At the time the deed
was made, a tenant was in possession of the land under a letting
for three years, at an annual rent of $48.    After the delivery
of the deed, the complainant remained on the land with the
tenant and collected the rent up to spring of 1892.    He also
paid the taxes on the property, and paid to the defendant the
interest of $366, in annual payments for three years.    The first
payment was made June 9th, 1890—the deed was delivered, it
will be remembered, June 8th, 1889—the second payment was
made June 19th, 1891, and the third June 7th, 1892.    For the
first payment the defendant gave the complainant a receipt, in
which he stated that he had received from the complainant
$21.96 " in full for one year's interest."    The complainant also,
during the three years succeeding the delivery of the deed, made
permanent improvements on the property.    He had a well dug ;
also a ditch made at a cost of $15, besides his own labor ; he
put windows in the house, and also new boards on one of its
sides ; he removed rocks and stones from the garden and built a
stone fence which added, as seems to be undisputed, at least $50
to the value of the property ; he also planted currant bushes and
fruit trees.    These improvements added, as the proofs show, at
least $100 to the value of the property.

These facts corroborate the truth of the complainant's evi-
dence, and go very far to prove that the defendant's story cannot
be true.    They show that the defendant for three years, recog-
nized the $366, which he had advanced to take up the mortgage,
as a debt which the complainant owed him, by receiving interest
on it from the complainant, and that for the same period he

allowed the complainant to deal with him as though his rights in the land were merely those of mortgagee, and to exercise a dominion over the land which indicated that he was its owner. But the defendant insists, that while the course of dealing between the complainant and himself, may, in some of its aspects, justify the belief that the relation existing between them, in respect to the land, was that of creditor and debtor, yet such, in truth, was not the fact, but that the complainant's annual payments to him were not made in discharge of interest but as payments in the nature of rent. He says the way these payments happened to be made was this: that when the deed was made he did not know the tenant in possession of the land, nor whether he was good or not, but he knew that the complainant boarded with him. He, therefore, arranged with the complainant that he should collect the rent of the tenant, and out of it pay the taxes and the interest on the $366, which he had advanced to take up the mortgage, and the balance the complainant might take for keeping the property in repair and for his services in taking care of it. The complainant denies that any such arrangement was made or suggested. His denial is supported by the probabilities of the case. It is manifest, that the natural effect of such an arrangement would have been to induce the complainant, if it was true that his only right in respect to the property was the bare right to repurchase it on paying as large a price as any other person might offer, to refrain from making either repairs or improvements. Every addition he made to the value of the property was so much money thrown away. Nay, worse than that, for every dollar he added to the value of the property lessened his chance of his being able to get it back. By increasing the value of the property he necessarily increased the price which he must pay on its repurchase. The fact that the complainant increased the value of the property, by permanent improvements, to the extent of at least $100, shows, almost conclusively, that he did not understand that any such arrangement existed as that set up by the defendant. The defendant's conduct shows also, I think, quite strongly, that no such arrangement existed. He was offered, about a year after the deed was made, $500 for the prop-

erty.   This was $134 more than he had paid :—an advance on
his investment of $366 quite sufficient, as it seems to me, to sat-
isfy the greed of even an avaricious person.   The person who
made the offer was eager to purchase and able to pay at once.
Now, in this situation of affairs, it is somewhat difficult to un-
derstand, why, if the defendant regarded himself as the absolute
owner, and subject to no duty to the complainant except to recon-
vey, he did not require the complainant, soon after this offer was
received, either to enter into a contract of purchase, or to increase
his annual payment from $21.96 to $30.   But he did neither;
on the contrary, for two years subsequent to the offer he con-
tinued to receive from the complainant merely the interest on the
sum which he had advanced to take up the mortgage.   This
course of conduct was perfectly consistent with the complainant's
claim that the deed was executed as a security, but utterly incon-
sistent with the defendant's claim that it was executed as an un-
conditional conveyance.   In my opinion, the decided weight of
the evidence, on the point in dispute, is with the complainant.
All the material undisputed facts of the case lead to the conclu-
sion that the deed was executed as a security, and it must, con-
sequently, be declared to be a mortgage.

Costs will be allowed to neither party against the other.   On
a bill to redeem, the mortgagor is, as a general rule, required to
pay costs, but this rule I think should be dispensed with in this
case.   The defendant's conduct in resisting redemption has been
oppressive.   He has resisted the complainant in a case where, as
I think it is manifest, from his own conduct, that he knew the
complainant was asking for nothing which he was not justly en-
titled to.   As I look at the case, it would be more consonant
with justice to award costs against the defendant than in his
favor.