HENRY C. PITNEY, JOHN R. EMERY, ALFRED REED, FREDERIC W. STEVENS AND MARTIN P. GREY, VICE-CHANCELLORS.

---

ORRIN VANDERHOVEN

*v.*

JOHN W. ROMAINE, ALFRED HEALEY and RICHARD EVANS.

[Filed January 5th, 1898.]

1. The fact that a deed, absolute on its face, was made only as security for a loan may be shown by parol, and the deed will be regarded as a mortgage, which the real owner of the property may redeem.

(1)

2. When the grantee in such deed, in the nature of a mortgage, sells the land without notice to the equitable owner, he should account for the fair net cash value of the property at the time of the sale, with interest from date of sale, against which he should be allowed credit for the amount due to him for the principal and interest of his advances at the time of the sale, with interest thereon from that time.

3. Under the circumstances of this case no costs allowed to either party.

On bill, answers and proofs.

*Mr. Isaac N. Miller*, for the complainant.

*Mr. De Witt C. Bolton*, for the defendant Healey.

*Mr. Frank Van Cleve*, for the defendants Romaine and Evans.

THE CHANCELLOR.

In December, 1885, the complainant applied to the defendant John W. Romaine to assist him in securing the title to thirteen lots of land in the city of Paterson. He had theretofore paid $90 on account of $500, the purchase price of the lots, and Emma C. T. Mortimer, who held the legal title to the lots, admitted his right to have a conveyance of them upon his paying to her $410, the unpaid balance of the $500, with the interest from March 2d, 1885. The complainant's difficulty was that he did not have the money to pay Mrs. Mortimer, who was unwilling to wait longer for the payment.

Mr. Romaine agreed to assist him, and taking from Mrs. Mortimer a deed for the land gave her a mortgage upon the property, payable in one year with interest, for $250, and paid her in cash $197.84, the balance due to her. Mr. Romaine says that he acted thus under a parol agreement with the complainant that he should take the title to the property absolutely and that the complainant would buy the property from him, within a year, for the amount of his advances with interest. On the other hand, the complainant insists that it was first proposed that the complainant's son should take the title to the property

and give Mrs. Mortimer a mortgage for $250, and that Mr. Romaine should lend $160 to enable the complainant to make the cash payment which Mrs. Mortimer required, but that as that plan would leave Mr. Romaine without security for the cash he should advance, it was subsequently arranged that Romaine should take title, as he did, as security for his advances or loan until the complainant should repay him.

These contentions present the question of fact whether the deed to Romaine consummated an absolute purchase of the property by him, or was merely taken by him in resulting trust for the complainant and as security for a loan made by him to the complainant.

The transaction at which the money was paid and the deed and mortgage were delivered took place in the office of William H. Williams, the lawyer of Mrs. Mortimer.

It does not appear that the complainant gave Romaine any acknowledgment of the indebtedness, but it does appear that in February, 1886, less than three months after the settlement with Mrs. Mortimer, he gave Mr. Romaine an order upon the comptroller of the State of New Jersey for $197.84, the amount of cash advanced by Romaine, to be paid out of moneys which should thereafter become due to the complainant for publishing the laws in a newspaper of which he was the proprietor. Later, $817.25 did become due to the complainant from the state for the publication mentioned and was paid to him or to others to whom he had given orders upon it. Mr. Romaine says that in August, 1886, he presented his order to the comptroller but was refused payment, the comptroller stating that the money due to the complainant was already fully covered by orders.

Mr. Williams testifies that after the delivery of the deed from Mrs. Mortimer to Romaine, Mr. Romaine made statements to him which led him to believe that Romaine had loaned the money advanced to the complainant. He remembers that Mr. Romaine said that he wanted to help the complainant, and that he showed him some orders on either the treasurer or comptroller of the state, which the complainant had given him as security.

He remembers, also, that in 1887, more than a year after the deed was taken by Romaine, he was instructed by Mrs. Mortimer to collect the amount due upon the mortgage Romaine had given her and that he urged both Romaine and the complainant to pay the mortgage, and that Romaine then stated to him that he was trying to get the orders he had had from the complainant cashed, that he did not wish to advance any more of his money, that he was simply acting in the matter as the friend of the complainant.

On the 3d of July, 1887, after foreclosure of the Mortimer mortgage had been commenced, Romaine paid the mortgage off; his payment being $293.75 for the principal and interest of the mortgage and the costs of the foreclosure proceedings to the time of payment.

After he had paid the mortgage off he several times asked the complainant to pay him the money he had advanced and take the property off his hands. Twice he talked with the complainant about temporary uses to which the land could be put, and two years after he received the deed from Mrs. Mortimer, he reported to the complainant that he had had the taxes reduced. In these matters he conducted himself as though the complainant had at least some right and interest in the land not inconsistent with that now claimed.

By the testimony of the complainant and of Mr. Williams and the corroborative circumstances adverted to, I am of opinion that it clearly appears that Mr. Romaine took the conveyance from Mrs. Mortimer in resulting trust for the complainant and as security for the repayment of his advances for the complainant, and that though the deed was absolute upon its face, it, in reality, must be regarded between him and the complainant, as having been a mortgage. It is well settled that the fact that a deed, absolute on its face, was made only as security for a loan may be shown by parol, and that the deed will be regarded as a mortgage from which the real owner of the property may redeem. *Clark* v. *Condit, 3 C. E. Gr. 358; De Camp* v. *Crane, 4 C. E. Gr. 166; S. C. on appeal, 6 C. E. Gr. 414; Van*

*Keuren* v. *McLaughlin, 4 C. E. Gr. 187; Phillips* v. *Hulsizer, 5 C. E. Gr. 308; Cake* v. *Shull, 18 Stew. Eq. 208; Pace* v. *Bartles, 2 Dick. Ch. Rep. 170; Winters* v. *Earl, 7 Dick. Ch. Rep. 52.*

The complainant, by means of the loans by Romaine to him and his previous payment of $90, furnished the full consideration paid Mrs. Mortimer for the property and became the real or equitable owner, and Romaine therefore not only held the legal title by way of mortgage to himself to secure the repayment of his loan, but also as trustee for the complainant upon the repayment of his advances.

In November, 1889, without notice to the complainant, Romaine sold the land to the defendant Healey for $900, $300 of which was paid to Romaine in cash and $600 of which was secured to be paid to Romaine by a purchase-money mortgage upon the land sold.

· The proofs abundantly satisfy me that Mr. Healey was a *bona fide* purchaser without knowledge or notice of the interest of the complainant in the property.   He paid a price for the property which, although perhaps below the full value of the land, was not so much below it as to arouse suspicion and put him upon inquiry.

Subsequently, in February, 1890, Mr. Romaine sold and assigned the purchase-money mortgage he had received from Healey to the defendant Evans for $575.   I think that Mr. Evans purchased in good faith without notice or knowledge of the complainant's right or interest.

It appears that the sale to Mr. Healey was negotiated by one Crooks, who acted as the agent of Mr. Romaine and was paid by Romaine $25 for his services.   Crooks knew of the complainant's interest in the property, but did not say anything to Healey about it, yet he did tell the complainant of the proposed sale and warned him that if there was anything coming to him he should take care of his interest.   It does not appear that the complainant took any steps to stop the completion of the transaction.

The proofs indicate that, so far as the opinions of witnesses go, the land sold to Healey at the time of the sale was worth about $1,200, but there is no proof which fully satisfies me that such a price could have been obtained for it in cash. Possibly more than $900 might have been had.

As the case stands we have this state of facts: That Mr. Romaine sold the property at private sale, upon his own discretion, without consulting the complainant or regarding him in the matter, and that the price realized was below the estimated value of the property, and that, shortly after the conveyance of the land, he sold and assigned the purchase-money mortgage at a considerable discount.

The bill, in substance, prays that Evans may reassign the $600 mortgage to Romaine upon just terms, and that Romaine may cancel it, and that Healey may be decreed to hold the property in trust for the complainant, and upon the complainant's payment to him of $410, with interest from March 2d, 1885, that he shall convey the same to the complainant or convey it to Romaine, who shall convey it to the complainant, " and that the complainant may have such other and further relief in the premises as shall be agreeable to equity and as the nature and the circumstances of the case may justify and require."

It is very clear that the relief specially prayed cannot be granted. The defendants Healey and Evans having been *bona fide* purchasers without notice of any right in the complainant or claim upon his part, are entitled to have the bill, as against them, dismissed, with costs. I think, however, that, under the prayer for general relief, the complainant is entitled to have redress against the defendant Romaine.

Romaine had the right to be repaid his loan, with interest, but he should not have sold the land without notice to the complainant. Having done so, he should account for the fair net cash value of the property at the time of the sale, with interest from the date of sale, against which he should be allowed credit for the amount due to him for the principal and

interest of his advances at the time of sale, with interest thereon from that time.    *Clark* v. *Condit, supra.*

This suit is, in effect, like a suit for redemption by a mort-gagor.    In such suits the mortgagor will be required to pay costs unless the conduct of the mortgagees has been unfair and oppressive.    *Phillips* v. *Hulsizer, supra ; Winters* v. *Earl, supra.*

In this case I think that the conduct of the defendant Romaine, in making a secret sale, was unfair, and that his resistance in this suit has been in a degree oppressive, and hence that he should not have costs as against the complainant.    At the same time, I am of opinion that the complainant's delay in repayment to Romaine so far induced Romaine's arbitrary action that it will be improper to permit him to recover costs against Romaine ; therefore, no costs will be allowed between the complainant and the defendant Romaine.

The realization by Romaine from the sale of the property after deducting the $25 paid to Crooks for effecting the sale, was $875.    The amount due to the defendant Romaine at the time of the sale was $574.67.    I will decree that the $875, with interest thereon from the date of the sale, November 18th, 1889, less $574.67, with interest thereon from the same date, be paid by the defendant Romaine to the complainant, unless the complainant shall elect to have the cash value of the property at the time of the sale ascertained, in which case there will be reference to a master, to ascertain what the cash value of the land then was, and that value, with interest, will be allowed to the complainant after deducting therefrom the $574.67 due to the defendant Romaine, with interest thereon from the date of the sale.