This is a bill to redeem, and to achieve that object the complainant prays that a deed executed and delivered by him to the defendant be declared to be realistically a mortgage.
On July 5th, 1924, the complainant purchased from Franklin Park Land and Construction Company, Inc., at the price of $1,500, ten lots identified as Nos. 838 to 847 inclusive, on a map filed in the office of the clerk of Middlesex County, entitled "Map of Creighton Manor, near Bound Brook, N.J., made by J.L. Bauer, C.E." *Page 80 
On June 17th, 1930, the complainant obtained a loan of $2,200 from the First National Bank of Bound Brook, to secure which he delivered his bond and an accompanying mortgage upon the lots, conditioned for the payment of the loan one year thereafter, with a provision inserted requiring intermediate payments of $50 every three months in reduction of the principal. He erected at a cost estimated by him to have been approximately $3,500 a two and one-half story frame dwelling house upon a portion of his lands in which he, unmarried, his aunt and niece have since continued to reside. On March 11th, 1941, the complainant executed, acknowledged and delivered a deed purporting to convey all of the premises to the defendant in fee, subject only to the mortgage on which there was then owing the sum of $1,525, and which according to the terms of the deed the defendant assumed and agreed to pay. The intended efficiency of that instrument is the topic now in controversy.
I have endeavored to discover the faculties of each party. The complainant attended school three years "on the other side" and reads and speaks English in a mediocre degree. He appears to be an inert and supine person, quite socially tame. The defendant is noticeably more perspicacious, alert and aggressive. Amid the circumstances the defendant undoubtedly possessed the faculties to outwit the complainant if he chose to so employ them.
It is evident that the complainant became exceedingly delinquent in the payment of his mortgage debt and the bank, presumably motivated by a disinclination to incur the alternative, generously agreed in 1939 to accept quarterly a payment of $25 in reduction of the indebtedness, plus current interest. From 1940 to the month of August, 1942, the complainant and his family depended upon public relief in the amount of $24 a month and the complainant, having received several critical notices from the bank, states that he became seriously apprehensive of the loss of his home.
It was in January, 1941, that the complainant became acquainted with the defendant who then was a tenant in the neighborhood, and in March, 1941, the complainant imparted his anxiety to the defendant. The complainant says *Page 81 
that initially he solicited a loan of $300 from the defendant, to which the defendant declined to accede because, as he expressed, the complainant might eventually lose the property by foreclosure and the defendant would have no security for the repayment of the loan. The urgent financial demand of increasing concern to the complainant was the payment of $25 on the principal of the mortgage together with an item of interest amounting to $19.06 maturing on March 11th, 1941.
The complainant relates that the defendant visited his home on the evening of March 10th, 1941, and in the presence of the complainant, his aunt and niece, proposed that the complainant deliver to him a deed for the property and that he, the defendant, would then make the payments of principal and interest accruing on the mortgage, with the understanding that whenever the complainant should fully reimburse him, he would reconvey the property to the complainant. The complainant insists that it was in pursuance of this agreement that he and the defendant visited the bank on the following day, where the complainant executed and delivered the deed to the defendant and the defendant in turn paid the bank the sum of $44.06. The defendant's narrative of the circumstances is contradictory and divergent. He declares that the complainant, despairing of his ability to retain the property, called at the home of the defendant and there agreed to alienate the property to him, provided he, the defendant, would assume the mortgage debt and permit the complainant to continue to reside in the house without rent for a period of one and one-half years.
A court of equity will regard a deed, absolute in form, as a mortgage where its intended delivery and contemplated effect were to secure a loan of money. This jurisdiction is exercised to prevent fraud or oppression, and to promote justice. The inquiry progresses beyond the terms of the instrument in quest of knowledge of the real character of the transaction and the true intention of the parties, in furtherance of which the instrument was utilized. The inquiry may be facilitated by the reception of parol evidence. The ultimate solution turns upon the actual intention of the parties *Page 82 
at the time of the transaction. Papsco v. Novak, 94 N.J. Eq. 642; 121 Atl. Rep. 518; affirmed, 123 Atl. Rep. 926; Elmer v.Lock, 111 N.J. Eq. 426; 162 Atl. Rep. 391; Titus v. Wallick,114 N.J. Eq. 171; 168 Atl. Rep. 453; Fidelity Union Trust Co. v.Farley, 127 N.J. Eq. 346; 13 Atl. Rep. 2d 313; affirmed without opinion, sub nom. Fidelity Union Trust Co. v.Stridsberg, 129 N.J. Eq. 386; 19 Atl. Rep. 2d 460.
To justify a decree for the complainant, the proofs must be clear and convincing. Titus v. Wallick, supra. Influential criteria to be observed in determining whether an absolute conveyance was in fact intended as an encumbrance are recommended by Vice-Chancellor Pitney in Pace v. Bartles, 47 N.J. Eq. 170;20 Atl. Rep. 352.
Reverting to the state of the proofs, it is evident that the deed was prepared by the secretary of the attorney of the bank in conformity with the request and directions transmitted to her by the cashier. The acknowledgment of the grantor was taken by a notary employed at the bank. Unfortunately the cashier has no recollection of the event or of the remarks of the parties. He is confident in the belief that he would not have arranged for the preparation of a deed rather than a mortgage had that measure not been in accordance with the expressed wishes of the parties. The notary was summoned to the office of the cashier, and there pursued only the usual formalities in the performance of his mission. It is, indeed, unfortunate that those disinterested participants in the transaction are unable to confer greater lucidity concerning the expressed intention of the parties.
I entertain no doubt that the complainant with his acquired knowledge of English and his past experience was aware that he was executing a deed and not another mortgage. In view of his delinquencies and other conditions, it is not probable that he could have negotiated a subordinate mortgage loan. His conception of his ability to retain the property was probably hopeless. Any contemplation of redeeming the property within a reasonable time was not very presumable. The deed cannot be annulled or transformed merely because the bargain now seems to have been imprudent. If the complainant *Page 83 
thereby acquired the privilege of maintaining a home on the premises for one and one-half years, the compact in the circumstances then existing was not manifestly improvident. Cf.Cook v. Osborn, 2 N.J. Mis. R. 1088.
More unfortunately, whatever may have been the conditional stipulation, it was not embodied in the deed. It seems peculiar that, had it been disclosed to the cashier, reference to it would have been omitted in his directions to the scrivener. The complainant states that he supposed that the deed contained a reservation of the right to redeem.
It may be proposed that the complainant's account of the terms of the agreement is buttressed by the corroborative purport of the testimony of his aunt and niece. Their testimony was exceedingly unimpressive. The niece, now fifteen years of age (then about thirteen), pretends that she was in the hallway and overheard the conversation of the parties upon the subject. She had apparently composed, memorized and rehearsed her artificial narrative. The aunt in an apathetic manner delivered her testimony as if following some inveterate routine. I discredit and reject their testimony. Riehl v. Riehl, 101 N.J. Eq. 15;137 Atl. Rep. 787. The defendant deposed that the discussion on March 10th, 1941, was at his place of residence, and not in the presence of the aunt and niece at the home of the complainant. I am inclined to believe him in that particular.
The complainant and his family have occupied a portion of the premises ever since the delivery of the deed. This circumstance might ordinarily tend to reduce the inference that an unconditional and absolute conveyance was intended, but the evidence also discloses that shortly after the delivery of the deed, the defendant and his wife entered the property and have since occupied a part of the house. Indeed, despite the present litigation, both complainant and defendant dwell in the house. The defendant has paid all taxes, insurance premiums and other charges incident to ownership of the property during the period intervening the delivery of the deed and the institution of this suit. All repairs and improvements to the property have been made by the defendant and the cost defrayed by him without any protest or apparent *Page 84 
concern on the part of the complainant. Cf. Titus v. Wallick,supra. The defendant has fully satisfied the mortgage indebtedness.
Two eventualities have adventitiously occasioned this litigation. The complainant found employment as a janitor at $36.58 a week, and secondly, there has arisen an intensive demand for homes of moderate value in or near an industrial center. The intention which existed when the deed was executed controls. No subsequent change of intention will alter its character.Doughty v. Miller, 50 N.J. Eq. 529; 25 Atl. Rep. 153; J.W.Pierson Co. v. Freeman, 113 N.J. Eq. 268, 271;166 Atl. Rep. 121. In the fall of 1942 the complainant requested his niece to inscribe a stipulation to be presented to the defendant that the conveyance of the property was provisional and that it was understood that the complainant could redeem the property upon reimbursing the defendant for his expenditures. This undertaking by the complainant is quite equivocal because he has asserted that he supposed the deed itself embraced such a reservation. It is not evident that he ever saw the deed after executing it. Whence suddenly came his information or apprehension that the deed was deficient in this respect? The defendant declined to sign the memorandum. Yet, according to complainant's testimony, it was only after the defendant's refusal to sign the memorandum that he decided to consult counsel. The hiatus is significant.
Next ensued the arrival at the house of a friend and fellow workman of the defendant who offered to purchase the property for $3,500 and tendered to the defendant a cash deposit of $200. A written receipt evidencing the purpose of the deposit was thereupon prepared, and the complainant was importuned to sign it as a witness. He declined to do so. It was probably a counterplot of the defendant to entangle the complainant, because the sale was never consummated and the pretending purchaser acknowledges that he has lost the receipt for his deposit.
The occurrences and circumstances divulged by the testimony are productive of a variety of suspicions and conjectures, inferior to credible proof. It is incumbent upon the *Page 85 
complainant to adequately establish his right to redeem.Freytag v. Hoeland, 23 N.J. Eq. 36; Winters v. Earl, 52 N.J. Eq. 52; 28 Atl. Rep. 15; affirmed, Id. 588; 33 Atl. Rep. 50. A mere preponderance resolved upon a delicate balancing of the testimony is not commensurate. The compatible effect of a writen instrument executed knowingly and voluntarily with due formality should not be easily modulated. There is sound reason supporting the rule that where the writing is in form an absolute conveyance, the parol evidence introduced to prove that the instrument was only intended to operate as a mortgage, must be clear, unequivocal and convincing. Otherwise the presumption that the instrument carries its purported effect must prevail. Cake
v. Shull, 45 N.J. Eq. 208; 13 Atl. Rep. 666; 16 Atl. Rep. 434;Clinton Hill Lumber Co. v. Strieby, 52 N.J. Eq. 576;29 Atl. Rep. 589; Wilson v. Wilson, 94 N.J. Eq. 212; 119 Atl. Rep. 167;Titus v. Wallick, supra; Fidelity Union Trust Co. v. Farley,supra.
My conclusion is that the complainant has not sustained the burden of proof with that degree of intelligibility which justifies a court of equity to award the relief he seeks.
A dismissal of the bill will be advised.