To prevent fraud or oppression and to promote justice, a court of equity will look beyond the apparent authenticity and perceptible efficiency of the written instrument and explore the character of the transaction and the contemporaneous intentions of the parties. The complainants invoke that doctrine in the prosecution of the present cause.
The complainants are a young married couple who at the dawn of the year 1944 were residing as tenants in an apartment at Trenton. They received notice of the termination of their tenancy, and they were consequently obliged to obtain another place of abode. Significantly, that exigency was the circumstance which originated the transaction to which this cause relates. *Page 253 
The complainants learned of a relatively inexpensive residential property in the city which the owners were inclined to sell. They promptly interviewed the owners and inspected the premises. Their enthusiasm to acquire a home of their own increased and their negotiations with the owners became more persistent, ultimately resulting in an oral agreement for the conveyance of the property to them at the price of $2,200.
The complainants were exultant, but the pragmatical necessity of financing their bargain intrusively and perhaps belatedly engaged their attention. Except for a few hundred dollars of savings, the only other asset they possessed which was capable of being promptly converted into cash was their automobile. They reluctantly resolved to forsake the car. They sold it for $1,700. And then, too, they realized from their examination of the premises that the house was in a state of disrepair throughout, and lacking in several of the commonplace modern accommodations. The need of additional capital seemed to be inescapable.
The prospect of a loan dashed into their contemplations. Mrs. Westcott entertained the conjecture that they might borrow from her mother, but it is said that the fugitive suggestion of a loan from his mother-in-law met with profound silence in the attitude of Mr. Westcott. From the narrative of the testimony, one can envision these fireside chats between Mr. and Mrs. Westcott.
The factual story must be prolonged. The ardent desire of an ambitious woman is not easily frustrated, and Mrs. Westcott nevertheless made bold to ask her mother for aid. The mother advised her to consult her brother, Peter, the defendant. Peter evidently was devoutly impressed, and he assured his sister that in the circumstances he would advance the entire purchase price of $2,200 and thus enable his sister and her husband to expend their fund freely in the imperative alteration and improvement of the property. The complainants were exceedingly grateful and discussed with Peter the means of safeguarding him against any eventual loss of his generous accommodation. Some form of receipt, promissory *Page 254 
note or mortgage to Peter was at first sight considered but Peter, it is said, explained that his monetary contribution was not to be regarded as a financial investment but rather as a personal loan by a brother to his sister, motivated by affection, and that he did not wish his assistance to be profaned by the exaction of any legal security.
The complainants then presumed it to be obligatory to engage the services of an attorney to supervise the consummation of the sale. Mrs. Westcott thereupon visited Mr. Deitz, with whom the members of her family were acquainted, and she imparted to himin extenso the information pertinent to the proposed purchase of the property. Mr. Deitz wisely recommended that a mortgage be executed and delivered to Peter to secure his outlay but Mrs. Westcott, appreciative of the kindness of her brother, of his faith in her, and of his willingness to loan an amount equal to the full purchase price of the property, was resolute in her judgment that the deed should be "made out to Peter."
It was not until the closing of title at the office of Mr. Deitz that Peter made his initial visible appearance on the stage of this transaction. Admittedly, he supplied the $2,200 in cash (he declares it was $2,400), and his name was inscribed in the deed as the grantee. Mr. Deitz caused the deed, dated March 20th, 1944, to be forthwith recorded, and he evidently thereafter dispatched it by mail to the complainants, in whose possession it has ever since remained.
Subsequent occurrences become illuminative. What was the conduct of the parties in respect of the property after the date of the deed? Pace v. Bartles, 47 N.J. Eq. 170;20 Atl. Rep. 352. The complainants entered into actual possession of the premises on April 1st, 1944, and immediately inaugurated their plans for the renovation and repair of the house. Extensive improvements were accomplished by the personal exertions of the complainants. Indeed, it is an acknowledged fact that Mrs. Westcott not only personally painted the interior of the house, but also its entire exterior. It is unimaginable that this young woman, by no means masculine in demeanor or sturdy or robust in body, would *Page 255 
have pursued such an extraordinary task had she not believed that the house belonged to her and her husband.
In September, 1946, Peter instituted an action in the New Jersey Supreme Court to eject the present complainants from the property. Why? Peter and Mr. Westcott in 1945 entered jointly into a business enterprise. The undertaking terminated in 1946 in discord and dissension. Peter became indignant and resentful.
At the final hearing of this cause, Peter in a noticeably broad and general manner denied the material elements of the complainants' alleged cause of action. Although he did not participate in the negotiations to purchase the property or engage the attorney or ever receive the deed, he insists that he acquired the ownership of the premises for himself. Peter declares that he furnished the money in cash for the payment of the materials used in the renovation of the house, the subsequent taxes, and the insurance premiums, through the agency of his sister or brother-in-law, who strangely have the insurance policy and all the receipts evidencing such expenditures. It is conceded that the payment of rent by the complainants was never intimated, and the period during which the complainants should occupy the premises was never specified or discussed.
The credible evidence gravitates clearly and convincingly in favor of the complainants. The deed to the defendant was intended, at least tacitly, to operate as a mortgage. Crane v.Bonnell, 2 N.J. Eq. 264; Clark v. Condit, 18 N.J. Eq. 358;Phillips v. Hulsizer, 20 N.J. Eq. 308; Sweet v. Parker,22 N.J. Eq. 453; Cake v. Shull, 45 N.J. Eq. 208; 13 Atl. Rep. 666;16 Atl. Rep. 434; Pace v. Bartles, supra; Winters v. Earl,52 N.J. Eq. 52; 28 Atl. Rep. 15; affirmed, 52 N.J. Eq. 588;33 Atl. Rep. 50; Vanderhoven v. Romaine, 56 N.J. Eq. 1;39 Atl. Rep. 129; Papsco v. Novak, 94 N.J. Eq. 642; 121 Atl. Rep. 518;Mansfield v. Kraus, 101 N.J. Eq. 287; 137 Atl. Rep. 440; Henn
v. Hendricks, 104 N.J. Eq. 166; 144 Atl. Rep. 602; NationalNewark and Essex Banking Co. v. Work, 108 N.J. Eq. 76;154 Atl. Rep. 11; Elmer v. Lock, 111 N.J. Eq. 426; 162 Atl. Rep. 391; *Page 256 Titus v. Wallick, 114 N.J. Eq. 171; 168 Atl. Rep. 453;Fidelity Union Trust Co. v. Farley, 127 N.J. Eq. 346;13 Atl. Rep. 2d 313; affirmed, sub nom. Fidelity Union Trust Co.
v. Stridsberg, 129 N.J. Eq. 386; 19 Atl. Rep. 2d 460;Alpaugh v. Alpaugh, 135 N.J. Eq. 200; 37 Atl. Rep. 2d825; 2 Story Eq. Jur., § 1018; 4 Kent Com. 142; Peugh v.Davis, 96 U.S. 332; 24 L.Ed. 775.
I realize that I have written at some length. The importance of a case is not to be measured by its monetary and financial characteristics. Here, the complainants are unjustifiably threatened with eviction from the modest premises which they so enthusiastically acquired and which they so laboriously prepared as their home. They have appealed to this court for protection and relief. I trust this decision will inculcate upon all the parties, both sister and brother, a faith in equity jurisprudence and its administration.
A decree will be advised permanently enjoining the prosecution of the action in ejectment and directing the defendant to convey the premises to the complainants upon payment of such amount as may be found to be due him. For the latter purpose a reference to a master will be made, if necessary. *Page 257