The question in its true form is whether we will give full faith and credit to the judgment of the New York court in so far as it finally adjudges the questions legally submitted to it, when it had jurisdiction both of the subject-matter of the controversy and of the parties to it.

It seems to me that there can be but one answer to this question, and that the court below erred in dismissing the complainant's bill.

*For affirmance* — ABBETT, DEPUE, GARRISON, MAGIE, BROWN, SMITH—6.

*For reversal*—DIXON, LIPPINCOTT, REED, VAN SYCKEL, BOGERT—5.

---

## THE CLINTON HILL LUMBER AND MANUFACTURING COMPANY, appellant,

*v.*

## JONATHAN F. STRIEBY et al., respondents.

Two things are indispensably requisite to render an absolute transfer a mortgage—*first,* the transfer must be made to secure the payment of a debt or the performance of a duty ; and, *second,* a right of redemption must exist in the mortgagor.

---

On appeal from a decree advised by Vice-Chancellor Van Fleet, who rendered the following opinion :

The complainants are judgment creditors of Frank D. Holloway. They bring this suit to procure a decree setting aside, for fraud, a bill of sale made by Holloway by which he transferred all his property to the Clinton Hill Lumber and Manufacturing Company.

The following facts are undisputed : Holloway commenced business as a dealer in lumber, in Newark, in September, 1892,

and continued such business for about five months, and until January 23d, 1893, when he transferred to the defendant the lumber in his yard and that in course of transportation, and also the good will of his business and everything else belonging to it, including his accounts receivable. The debts on which the complainants' judgments are founded were contracted by Holloway in the purchase of lumber during the five months he was engaged in business, and a part of the property which he transferred to the defendant consisted of lumber which he had purchased of the complainants. The defendant was organized on the very day that the transfer was made. At that time the defendant was without a penny in its treasury, as well as wholly destitute of assets of any other kind. Though the answer alleged that four hundred and five shares of stock, at $100 each, were subscribed for the day the defendant was organized, so far as appears, not a single dollar in money has ever been paid on the subscriptions. The defendant has never acquired any property of any kind except that which Holloway transferred to it and about $3,000 worth of lumber in addition which Holloway had purchased just prior to the transfer and which was delivered to him on the guaranty of a third person that it should be paid for. The value of the property transferred, as ascertained and settled by Holloway and a representative of the defendant, was $15,100, but the defendant made no agreement or promise, either before or after the transfer, to pay that sum or any other for it in money. And the defendant has never paid a dollar for it in money. All that the defendant has ever given in exchange for the property is to issue eighty-two shares of its stock to one of Holloway's creditors.

The circumstances under which the transfer was made, as described by the defendant in its answer, were these: Holloway commenced business with capital furnished by one William S. Ketcham, Sr. For more than a month prior to the date when the defendant corporation was organized, Holloway's business had come to a standstill for lack of money to carry it on and to pay Holloway's debts. Ketcham refused to advance any more money. Holloway then proposed that a corporation should

be formed, and agreed that if it was he would convey his assets and business either to Ketcham or to the corporation, and that if the transfer was made to the corporation, the corporation should issue its stock to Ketcham for the value of the assets and business transferred; and that Ketcham thereupon agreed that on the transfer by Holloway of his assets and business to the corporation, he would accept its stock, at par, for the value of the same. The corporation was formed and the transfer was made, as the answer alleges, to carry this arrangement into effect. The answer also says that Holloway was at this time insolvent, or, to quote the language of the answer, he " was entirely without means to pay said debts or to carry on said business." This arrangement, it will be noticed, made it the duty of the corporation to issue stock to Ketcham for the entire value of the assets and business transferred by Holloway, even if the sum due to Ketcham was much less than the value of the assets and business.

At the time the transfer was made the amount due from Holloway to Ketcham was a little less than $9,610, and the value of the property he transferred was over $15,000, so that if the arrangement set forth in the answer had been carried out according to its terms, Ketcham would have received in defendant's stock, in payment of his debt, nearly $5,400 more than was due to him. But the proofs show that this arrangement was not carried out. Only eighty-two shares of stock were issued to Ketcham. Forty were issued to him and forty-two to two other persons, by his direction and on his account. Assuming, for present purposes, that these shares were a marketable commodity and could have been put on the market and sold for par—a thing which it is almost absolutely certain could not have been done—it is manifest that, by means of the transfer, the corporation obtained from a debtor in failing circumstances, property worth over $15,000, for $8,200, and that all of the debtor's creditors except one were defrauded to the extent of nearly $7,000. William S. Ketcham, Sr., swears positively that the consideration which the defendant was to pay to Holloway for the property transferred was the amount of Holloway's indebt-

edness to him, and that there was no arrangement or agreement that anything more should be paid or given in case the value of the property exceeded the sum due to him from Holloway.

These facts, as I think, establish a plain case of fraud. The transaction was conspicuously fraudulent as against Holloway's creditors, both in its essential elements and in its result. By means of it, Holloway either gave away or attempted to conceal a large amount of property which his creditors had a right to have applied to the payment of their debts.

But it has been suggested that the validity of this transaction should be upheld, even as against the creditors of Holloway, on the ground that the transfer to the defendant was made by way of mortgage to secure the debt which Holloway owed to Ketcham. There can be no doubt that a transfer absolute on its face may be shown to have been executed as a mortgage, but to warrant a court in so changing the legal effect of such an instrument, clear and convincing evidence must be produced, proving that, though the transfer is absolute in its terms, it was fully understood by both parties, at the time of its execution, that the relation of creditor and debtor should continue between them, and also that the debtor should have the right, on paying his debt, to have his property returned to him. Two things are indispensably requisite to render an absolute transfer a mortgage—*first*, the transfer must be made to secure the payment of a debt or the performance of a duty; and *second*, a right of redemption must exist in the mortgagor. This case is not only destitute of the least evidence tending to show that it was understood that Holloway should have a right to redeem the property transferred, but all the circumstances attending the transfer— the nature of some of the property transferred, the person to whom the transfer was made and the purpose for which it was made—go to show, with almost conclusive force, that it was intended to be absolute and unconditional.

But if it were possible, under the evidence in this case, to change this instrument from an absolute transfer to a mortgage, I still think there would be strong reason to doubt whether there had been such an immediate delivery of the things mortgaged,

followed by such an actual and continued change in their pos-
session as would, without a verification of its consideration and
without its being recorded, render the instrument valid against
the creditors of its maker.   The proofs show that the defendant
took possession of the property transferred, not as mortgagee or
as the agent of a mortgagee, but as its absolute owner, and dealt
with it and disposed of it as its owner.

The complainants are entitled to a decree, with costs.

*Mr. Samuel J. McDonald,* for the appellant.

*Mr. James E. Howell* and *Mr. John O. H. Pitney,* for the
respondents.

PER CURIAM.

Decree affirmed, for the reasons given in the court of chancery.

*For affirmance*—THE CHIEF-JUSTICE, DIXON, GARRISON,
LIPPINCOTT, MAGIE, REED, VAN SYCKEL, BOGERT, BROWN,
GREEN, KRUEGER, SIMS, SMITH—13.

*For reversal*—None.

---

JOEL THOMAS, appellant,

*v.*

FRANCIS D. WEAVER et ux., respondents.

In an action against husband and wife to enforce the specific performance
of a contract to convey land, a plea by the wife that complainant refused to
carry out the agreement unless she executed a like agreement, which she did,
without consideration and solely to answer for the default of her husband in
carrying out said agreement, is a good defence to an action against her under
the statute (*Rev. tit. "Married Women" § 5*) providing that no married woman
shall be liable on a promise to answer for the default of another.