## ALBERT CORNELL *v.* CORNELIUS PIERSON.

A., being indebted to B., in $90, conveyed certain real estate to B., to secure the payment thereof. And A. being also possessed of personal property, *consisting of* household furniture, horses, cattle and farming utensils, to the value of about $300, all which had been recently levied on under execution from a Justice's Court, and advertised, by a constable, for sale, it was agreed between A. and B. that B. should [purchase all the said personal property, at the constable's sale, and, on being repaid by A., at any time, the sum at which the same should be struck off to B. at such sale, should convey the same to A.; and, accordingly, B. purchased all the said personal property at the constable's sale, for $72. After the sale of the personal property, B., by writing under seal, dated April 4, 1838, reciting the said deed to secure the said $90, and the said purchase by B., at said constable's sale, of all the personal property of A., for $72, certified, that it was agreed between B. and A., that if A., his heirs, &c., should, at any time thereafter, refund to B. the said $90, with interest, B. should reconvey to A. the said land; and that, if A., his heirs, &c., should, at any time, refund to B. the said $72, with interest, B. should re-convey to A. all the said personal property. In 1840, B. sold the real estate, for about $900, and the personal property, for $190. In 1846, A. exhibited his bill against B. for an account.

*Held,* as to the land, that the deed and defeasance constituted a mortgage. That, B having sold the land to a *bona fide* purchaser without notice of the defeasance, the sale could not be disturbed; but that B. was accountable for the proceeds of the sale.

But that as to the personal property A. was not entitled to relief; the nominal prices at which the goods were permitted to be sold at the constable's sale, the facts, that they were all bought by B., that they remained in A.'s possession for nearly two years, that, in the meantime, other executions were issued against A., which were returned, " no goods found," being sufficient to show that the arrangement under which the goods were sold was made for the purpose of defeating or delaying creditors.

Bill filed September 29, 1846, by Albert Cornell, stating that the complainant, being seized of certain real estate in South Brunswick, consisting of a farm of about —— acres, and a lot of meadow land of about nine acres, and being indebted to Cornelius V. Pierson, the defendant, in $90, which he was unable to pay, the said defendant proposed to him that he should convey to said defendant the said real estate, to secure the payment of the said $90, and that, upon the payment by the complainant to the defendant of the said $90, and the interest

thereof, at any time thereafter, the defendant shall re-convey the said real estate to the complainant.

That the complainant acceded to this proposal, and thereupon conveyed the said real estate to the defendant by deed, dated, &c.

That, about the same time, the complainant was possessed of certain personal property, consisting of household furniture, horses, cattle, stock and farming utensils, amounting in value to about $300 ; a schedule of which is annexed to his bill. That the whole of said personal property had then recently been taken in execution, and was advertised for sale by a constable, to satisfy a judgment then recently obtained against the complainant in a Court for the trial of small causes. That the complainant, being unable to pay the said judgment, and fearing that, by a forced public sale the whole of said personal property, though far exceeding in value the amount of said judgment, would be sacrificed to pay the said judgment, applied to the defendant, who is the son-in-law of the complainant, to befriend the complainant in the matter. That the defendant, professing a willingness to befriend the complainant, offered to purchase the said personal property, at the constable's sale, for such sum as the same should be struck off at ; and, upon being repaid by the complainant, at any time, such sum and the interest thereof, he, the defendant, would re-convey the said personal property to the complainant. That the complainant readily acceded to this offer, and accordingly the defendant purchased the said personal property, at the constable's sale, for the sum of $72, and took the same into his possession.

That the said personal property was purchased by the defendant, and the said real estate was conveyed to him by the complainant, in the trust and confidence that he should re-convey to the complainant both the said personal property and the said real estate upon the re-payment by the complainant to him of the said monies, to wit, the said sum of $72 and the said sum of $90, with the lawful interest thereof. And, in order to manifest the said trust, the defendant made and entered into a written agreement with the complainant, under the hand and seal of the defendant, dated April 4, 1838, which he delivered to the com-

plainant, and is as follows :    Whereas, on the 31st March, 1838, all the personal property of Albert Cornell was sold at constable's sale; and whereas I, Cornelius V. Pierson, being willing to befriend the said Albert Cornell in the best way I can, and have therefore bought all the personal property of the said Albert at the said constable's sale, for $72.    And whereas the said Albert Cornell is further indebted to me in $90, to secure which he has made me a deed for all his landed estate.    Now this is to certify, that it is fully agreed between him and me, that if the said Albert, or his heirs, executors or administrators, shall, at any time hereafter, refund to me the said sum of $72, with the lawful interest that may accrue thereon, I hereby obligate to re-convey to him all the said personal property.    And, further, that if the said Albert, or his heirs, executors or administrators, shall, at any time hereafter, refund to me the said $90, with the lawful interest that may accrue thereon, I hereby obligate to re-convey to him all the said landed estate before mentioned : to which contract or agreement I do hereby bind myself, my heirs, executors and administrators.

The bill states, that it was, at the same time, agreed by and between the complainant and the said defendant, that, as the complainant was about to remove out of the State, the defendant should sell and dispose of the said personal property and real estate, as soon as a competent and satisfactory price could be obtained for the same ; and, in the mean while, until a sale could be effected, he should rent out the real estate; and, out of the monies arising from the sale of the said real and personal estate, and the rents of the said real estate, the defendant should pay off two certain mortgages upon the said real estate, one of $200, and the other of $130, and, after deducting the said monies due the defendant, to wit, the said sum of $72 and the said sum of $90, with the lawful interest thereof, the defendant should pay to the complainant the residue of the said monies arising from the said sale and rents.

The bill states, that the defendant leased the said real estate for one year ending April 1, 1840, for which he received $60. That, on the 28th April, 1840, he sold the said personal prop-

erty, for the sum of $190; and that, on 18th May, 1840, he sold the said meadow lot for $96; and that, on —— day of ———, 1841, he sold the said farm for $762,50.

That the defendant received the proceeds of the sale of said real and personal estate and the said rents, amounting, in the whole, to $1,108,50.

That the said personal and real estate was the only property the complainant possessed or owned; and that he was entitled and expected to receive the monies due him thereupon as soon as the same were received by the defendant; but, on divers pretences, which the complainant, at the time, supposed to be true, but which he has since discovered to be false and unfounded, the defendant delayed, from time to time, to remit to the complainant any portion of said monies. And the complainant was compelled to return to the State for the purpose of seeking a settlement with the defendant.

The bill prays an account; and that the defendant may be decreed to pay to the complainant such sum as shall be found to be due to him; and for such further and other relief, &c.

The answer admits the constable's sale of the personal property, and that, at the sale, the defendant became the purchaser of the articles set forth in said schedule, for the sum stated in the bill; but denies that the same were purchased by the defendant under or pursuant to the arrangement or agreement charged in the bill, or under any arrangement or agreement with the complainant; but solely from a desire to benefit the complainant's family. He admits that, shortly thereafter, the complainant did, by his deed, acknowledged April 3d, of same year, sell and convey to him the real estate in the bill mentioned, subject to the incumbrances, for $90, being a debt due to him, the defendant, from the complainant, although the nominal consideration in said deed is $800; and that, at the execution and delivery of the said deed, on the day following, an article in writing, of the purport set forth in the bill, and dated, as he believes, on the 4th of said April, was duly made and executed, under the hand and seal of this defendant, and delivered to the

complainant. And he admits that the said real estate was conveyed to him, as aforesaid, with the understanding or arrangement of redemption as set forth in the said sealed writing; but he denies, if material for him so to do, that the said conveyance of the said real estate, or the said sealed writing, were made at his request; but insists that the same were the proposal of the complainant, and pressed by him on this defendant. He denies that any other arrangement or agreement between him and the complainant in relation to said real and personal estate accompanied the conveyance, or the said sealed article, otherwise than as set forth in the said sealed article; and, particularly, denies, that it was at the same time agreed between the complainant and defendant, as the complainant was about to remove out of the State, the defendant should sell and dispose of the said personal property and real estate as soon as a competent and satisfactory price could be obtained for the same, and, in the mean while, until a sale could be effected, he should rent out the real estate, and, out of the monies arising from the sale of the said real and personal estate and the rents of the said real estate, he should pay off two certain mortgages upon said real estate, one of $200, and the other of $130, and, after deducting said monies due this defendant, to wit, the said $72 and the said $90, with interest thereon, he should pay the residue of said monies arising from said sales and rents to the complainant.

He admits he leased the said real estate as stated in the bill, for one year, for $60; but says he received but $40, as near as he can ascertain; and that he disposed of the said real and personal estate at the times and for the sums stated in the bill, and that he has received the same, except a loss of $40 on said personal property for various articles claimed by third persons, and deducting the necessary expenses and mortgage loans.

He says, that after the said conveyance of the said real estate, the same, with the said personal property, remained in the possession and enjoyment of the complainant, without rent or other payment to this defendant, for two years, (though the same was formally rented to one Peter Cornell, a son of the complainant, then residing with him,) and that during the said time, the com-

plainant was greatly harassed by his creditors; several times forced to give bond for the benefit of the insolvent laws, until, finding himself wholly insolvent and unable to get along, in April, 1840, he absconded from the State, abandoning the said property, and leaving his family, and a sealed letter to them, stating the reasons of his departure.  That, for two months ensuing, the complainant's family, being in a destitute situation, were supported by this defendant, and then carried, with their baggage, to New Brunswick, their passage paid to New York, and $50 advanced to carry them to Fordham, in the State of New York, where the complainant then was; and that he has, at different times since their departure, and whilst residing in New York, voluntarily advanced considerable sums of money to the complainant, or the members of his family, towards their support; and that, in November, 1844, the complainant, with his family, by previous arrangement with this defendant, returned to New Jersey, and to a house in ——————, in the County of Middlesex, belonging to this defendant, and which had previously been repaired by him for the purpose, and which he had provided as a permanent home for the complainant and family; and he denies that there is a large balance or any balance of money due or owing to the complainant from this defendant for or by reason of the sales of the said real and personal estate and the interest and profits thereon.

And he insists that the pretended claim, if any, of the complainant to any part of the monies arising from the said sales arose more than six years before the filing of complainant's bill; and he claims the benefit of the Statute of Limitation; and he also insists that the pretended agreement, if any, in addition to or in variation of the said sealed article, was not reduced to writing, and is invalid; and he therefore claims the benefit of the Statute of Frauds and Perjuries.

Testimony was taken on both sides.

*H. V. Speer* for the complainant.   He cited 2 *Story's Eq. Jur.*, sec. 1018, 19; 4 *Kent's Com.*, 142; 1 *Story's Eq.*, sec.

371; 1 *Atk.*, 260; 2 *Breckenr. Rep.*, 311; 1 *Scho. and Lef.*, 123; 12 *Law Journal*, new series, 316; 26 *Maine Rep.*, 555; 22 *Pick. Rep.*, 253; 1 *Black. Rep.*, 363; 3 *Ves.*, 613.

*R. Adrain* for defendant. He cited 1 *Green's Ch. Rep.*, 438; 5 *John. Ch.*, 1; 6 *Ib* ., 117; 1 *Story'sEq. Jur.*, sec. 61.

THE CHANCELLOR. As to the land, the deed and defeazance constitute a mortgage; and the complainant had the right to redeem on payment of the $90, to secure which the deed was given, and the interest. The defendant should not have sold the land; but should have filed a bill to foreclose the equity of redemption, and for a sale under the decree of this Court.

The defendant having sold the land to a bona fide purchaser without notice of the defeazance, that sale cannot be disturbed; but the defendant is accountable for the residue of the proceeds of that sale, after satisfying his debt and interest.

As to the personal estate, I think the complainant is not entitled to relief. The personal property was sold by a constable, on an execution against the complainant, and was bought at that sale by the defendant, no other person buying any thing. The prices at which the articles were struck off show that another object besides that of paying the execution debt was contemplated by the complainant in permitting a sale at such prices, mostly merely nominal. After this sale the property sold remained in the complainant's possession for about two years. Within that time other executions were issued against the complainant, and were returned " No goods found." These returns were made on the ground that, by the said constable's sale, the property in the goods had passed to the defendant, absolutely.

It would be a mischievous precedent to allow the complainant now to reclaim the goods on the ground of an arrangement between him and defendant, that the complainant was to have the goods on the payment to the defendant of the amount at which the defendant bought them at such a sale.

Decree accordingly.