## BARTON FRINK

### v.

## ISRAEL S. ADAMS.

1. A deed absolute on its face may, where such was the intention of the parties, be declared to be a mortgage, but its character must be determined by the mind of the parties at the time of its execution and not at a subsequent date.

2. A grantee for value of a mortgagee under a deed absolute on its face, who acquires title without notice that the deed was a mortgage, will hold the land free from the equities of the mortgagor.

3. The title upon record is a purchaser's protection if he purchases in good faith.

4 The direct and positive answer of a defendant, responsive to the charges of the bill, respecting matters within his own knowledge, in a case where the complainant has required him to answer under oath, must prevail unless overcome by two witnesses, or by evidence equivalent thereto.

On final hearing on bill and answer and proofs taken in open court.

Mr. *Thomas E. French* and Mr. *Abraham Browning*, for complainant.

Mr. *H. L. Slape* and Mr. *Peter L. Voorhees*, for defendant.

VAN FLEET, V. C.

The principal object of this suit is to procure an adjudication that the defendant holds certain lands as mortgagee, and not as owner. The lands in controversy were originally held by the complainant and one Daniel Baker, as tenants in common, each

owning a moiety. On the 10th of March, 1877, the complainant and Baker mortgaged the land to one George Shepherd, to secure their bond, made the same day, conditioned for the payment of $800, in one year from its date, with interest. The bill alleges that this bond was given for the complainant's several debt, and that Baker signed it simply as surety. The complainant and his wife subsequently conveyed the complainant's moiety to Baker. The deed by which this change of title was effected bears date March 15th, 1877, was acknowledged by the complainant March 29th, 1877, and by his wife July 8th, 1879, and recorded July 10th, 1879. The bill alleges that this deed, though absolute in terms, was not intended as a conveyance, but simply as a security that the complainant should pay the bond which Baker had executed with him. The proof shows that a second mortgage, to the same mortgagee, was executed by the complainant and Baker, February 15th, 1878, on the same premises, to secure the payment of $225. No allusion is made to this mortgage in the bill. On the 3d of September, 1879, Baker conveyed the lands in controversy to the defendant, for a consideration of $3,000. From this sum $1,025 was deducted for the two mortgages, and the balance was paid as follows: $775 in cash, and $1,200 by the conveyance of a house and lot. Baker died November 11th, 1879. The complainant charges that, at the time the defendant acquired his title, he had full notice of the real character of the deed from him to Baker, and he therefore insists, that the defendant holds the lands as mortgagee, and that he has a right to redeem them.

The averment of the bill that Baker executed the bond and mortgage for $800 to Shepherd, as surety for the complainant, is not proved. The complainant, in his affidavit annexed to the bill, says that the loan for which the bond and mortgage were made, was made to him alone, and that Baker signed the bond simply as his surety, but in his evidence given on the hearing he said Baker got part of the money for which the bond and mortgage were given; that Baker generally took what he wanted and he got the balance; that he supposes Baker got over $200 of this money, but he cannot say exactly how much. The two

Frink *v.* Adams.

statements, it will be perceived, are so clearly repugnant that it is impossible, in the absence of any attempt to explain their inconsistency, to accept them both as true. But this is not the main infirmity of the complainant's case. He admits that the conveyance he made to Baker, of his moiety, was absolute on its face, and it is undisputed that before the defendant purchased, that conveyance was made a matter of public record. It is also undisputed that the defendant, before completing his purchase, consulted the public records and examined the record of this conveyance. Neither can it be disputed that the defendant was a purchaser for value. Now, in this condition of facts, it is manifest, unless the complainant has demonstrated by such measure of proof as satisfies the judgment of the court, that, at the time the defendant acquired title, he knew, or was chargeable in law with knowledge, that the conveyance from the complainant to Baker was not what it purported to be on its face, but was meant by the parties, at the time of its execution, to be a mortgage, his case fails, and his bill should be dismissed. The title upon record is a purchaser's protection; he may rely upon it, and if the defendant in this case, at the time he obtained title, had notice of nothing respecting the character of the conveyance from the complainant to Baker, except what appeared upon the record, he has a right, according to both reason and justice, to hold the lands free from all secret equities existing in favor of the complainant. One of the most beneficial objects of the registry acts is to protect purchasers against a secret arrangement like that on which the complainant rests his right to relief. If his claim is true, he used a delusive instrument to effect his purpose, and if, in consequence, he has suffered harm, it is his own fault. He can have no redress for a self-inflicted injury.

The important question, then, is, did the defendant have the knowledge charged against him by the complainant? The burden is on the complainant. He makes the charge and is bound to establish its truth. To test the truth of his charge, the complainant has appealed to the conscience of the defendant, and required him to answer under oath. And he has done so, denying explicitly and positively, that at any time previous to his

acquisition of title, or at the time he obtained title, he had any notice, knowledge or information whatever that the deed in question was a mortgage, or intended so to be. His statements as a witness in his own behalf are equally full and positive. In this situation of the evidence, the complainant must fail, unless he has overcome the defendant's answer, by producing a greater weight of proof in support of his charge, than is to be accorded to the defendant's answer, for the rule is firmly established that the direct and positive answer of a defendant, responsive to the charges of the bill, respecting matters within his own knowledge, in a case where the complainant has required him to answer under oath, must prevail, unless overcome by two witnesses, or by one witness supported by circumstances, or by evidence equivalent thereto. *Brown* v. *Bulkely, 1 McCart. 294; Bird* v. *Styles, 3 C. E. Gr. 297; Vandegrift* v. *Herbert, 3 C. E. Gr. 466.* The credibility of an answer may be greatly impaired by matter appearing upon its face; it may state a condition of facts so improbable as to shock the credulity of a discerning mind, or it may be so inconsistent and contradictory as to be self-destructive. But nothing of the kind appears in this answer. It is free from self-contradiction, and the facts it states are such as are reasonable and probable under the circumstances.

The complainant cannot succeed, then, unless the balance of proof on this point is in his favor. The testimony of but a single witness stands opposed to the truth of the defendant's answer, and the natural effect of the story he tells is rather to excite distrust than to inspire belief. He says a few weeks before the defendant purchased, he notified the defendant, plainly and distinctly, that Baker's title was a mere mortgage, and he further says, shortly after the defendant obtained title, they had another conversation, in which the defendant rather boastfully admitted that prior to getting title he knew all about the secret arrangement between the complainant and Baker. There was nothing in the bargain to excite avarice, or to induce the defendant to run any hazard to get the lands. They were unimproved and unproductive, consisting of sand banks and sedge meadows;

Frink v. Adams.

Baker initiated the negotiation and not the defendant; he paid their full market value, and I think it quite improbable, under the circumstances, that any prudent person could have been induced to purchase them at the price which the defendant paid, if there had been anything before his mind justifying a strong suspicion that Baker's title was defective. But this is not a case in which it is necessary, in order to arrive at the truth, to weigh probabilities, and decide which of two witnesses, giving conflicting evidence, is entitled to the highest degree of credit, but a case where, conceding both witnesses are entitled to equal credit, one oath stands against the other, and where, in consequence of the perfect equipoise of the evidence, he upon whom the duty of demonstrating the fact rests, must fail because of the insufficiency of his proofs. There are no corroborating circumstances tending to support the truth of the complainant's witness and impugning the truth of the answer; it is simply the case of oath against oath.

It is a familiar rule that equity will give effect to a deed according to the intention of the parties, and accordingly, a deed absolute on its face may, where such was the intention of the parties, be declared to be a mortgage, but its character must be determined by the mind of the parties at the time of its execution. If, at the time of its delivery, they intend that it shall have effect as an absolute conveyance, no subsequent change of intention can make it a mortgage. The deed from the complainant to Baker was drawn and partially executed in 1877. It was not fully executed until July 8th, 1879. It was not delivered until the latter date. Under what circumstances it was delivered, or what understanding was then had between the parties, the complainant has not informed us. Whether it was delivered as an absolute conveyance or as a mortgage, the complainant does not tell us. He must certainly know, and his failure to tell may justly be regarded as a very suspicious circumstance. His bill must be dismissed, with costs.