123 N.J. Super. 183 (1973)
302 A.2d 147
JAMES TALCOTT, INC., A CORPORATION OF NEW YORK AUTHORIZED TO DO BUSINESS IN NEW JERSEY, PLAINTIFF,
v.
ROTO AMERICAN CORPORATION, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 27, 1973.
*187 Mr. Stephen J. Moses, attorney for Cardinal Bag & Envelope Co., Inc.
Mr. L. Milton Freed, attorney for United Convention Decorators, Inc.
Mr. William J. Hunt, Assistant U.S. Attorney, for the United States of America (Mr. Herbert Stern, U.S. Attorney, attorney).
Mr. Laurence B. Orloff, Stanley Schwartz, of Messrs. Hannoch, Weisman, Stern & Besser, attorneys, for Holobeam Securities Systems, Inc.
TRAUTWEIN, J.S.C.
This proceeding originated in the filing of a mortgage foreclosure complaint. After judgment of foreclosure and sheriff's sale various liens were satisfied, leaving a surplus of $126,471.99 which is presently held by the clerk of the court.
Out of the welter of many claims, four motions are here pertinent. Each movant seeks payment in full of his claim (the claim of the United States of America, if accorded first priority, would exhaust the surplus fund). The following are the four claims:
(1) Cardinal Bag & Envelope Co. (Cardinal)  unpaid balance of a judgment entered against Roto American Corporation ("Roto") on September 11, 1967, with interest at 6% from September 11, 1971  $6,091.50.
*188 (2) United Convention Decorators (Decorators)  judgment with interest in the amount of $1,986.05, with interest to be computed from November 17, 1971.
(3) United States of America (U.S.)  tax lien, with interest from November 5, 1971  $48,524.86.
(4) United States of America  tax lien, with interest computed from November 5, 1971 in the amount of $36,566.69.
(5) United States of America  tax lien, with interest computed from November 5, 1971 in the amount of $93,762.19.
(6) United States of America  tax lien, with interest computed from November 5, 1971 in the amount of $9,283.87.
(7) United States of America  tax lien with interest computed from November 5, 1971 in the amount of $14,014.64.
(8) United States of America  tax lien, with interest computed from November 5, 1971 in the amount of $1,713.32.
(9) Holobeam Securities Systems, Inc. (Holobeam)  on the basis of an equitable mortgage, with interest from February 19, 1969 in the amount of $40,000.00.
Basic relevant facts which the court finds are as follows:
(1) 25% of Cardinal's claim was paid to it on June 19, 1968 by virtue of an order of a referee in a chapter XI petition filed in the Federal District Court of New Jersey, made on November 29, 1967.
(2) On October 7, 1968 certain deeds executed by Roto to Leeds Department Stores were assigned to Holobeam. They form the basis of Holobeam's contentions that they hold an equitable mortgage. Said deeds were recorded on October 10, 1968.
(3) On February 19, 1969 the parties to the so-called "equitable mortgage" agreed that the amount of the mortgage was to be $40,000 instead of $50,000.
(4) The foreclosure complaint in the present case was filed on December 10, 1969.
*189 (5) On March 16, 1970 Roto was adjudicated a bankrupt in the Federal District Court of the Southern District of New York.
(6) Final judgment of foreclosure was entered on June 26, 1970.
(7) On November 16, 1970 the Sheriff of Bergen County conducted a sale in accordance with said mortgage foreclosure.
(8) Bankruptcy proceedings are still pending in the Federal District Court for the Southern District of New York.
Briefs and affidavits have been filed in support of the foregoing motions. After considerations of the briefs, affidavits and oral argument, the court renders the following decision:

I. Claim of the United States of America
The claim of the U.S. is based upon federal tax liens filed against the subject property. The dates of recordation and the amounts of the several liens are as follows:

 Recordation Amount
 (a) 6-20-68 $48,524.86
 (b) 7-19-68 36,566.69
 (c) 10-11-68 93,762.19
 (d) 10-11-68 9,283.87
 (e) 2-18-69 14,014.64
 (f) 9-3-69 1,713.32

All of the above amounts include accrued interest to November 5, 1971.
In its answer to the complaint in foreclosure, the U.S. claimed priority under the Federal Tax Lien Act of 1966. Subsequent to the filing of its answer, and for purposes of this motion, the U.S. asserted its priority under R.S. 3466, 31 U.S.C.A., § 191. Its lien is established under 26 U.S.C.A., § 6321 et seq., but its priority, it contends, is afforded by R.S. 3466, 31 U.S.C.A. § 191, which priority, it alleges, is absolute. This court disagrees.
The absolute priority statute R.S. 3466, 31 U.S.C.A. 191, § reads as follows:
*190 Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed.
A grave question of the survival of this Insolvency Statute after the enactment of the Federal Tax Lien Act of 1966, Pub. Law 89-719, 80 Stat. 1125, confronts this court. The very same question was considered in H.B. Agsten & Sons, Inc. v. Huntington Trust & Savings Bank, 388 F.2d 156 (4 Cir.1967), cert. den. 390 U.S. 1025, 88 S.Ct. 1413, 20 L.Ed.2d 282 (1968). There Chief Judge Haynsworth, in his concurring opinion, stated:
It is most unfortunate that the Congress, when considering the Federal Tax Lien Act of 1966, did not focus its attention specifically upon the Insolvency Statute. Had it done so, I am confident the Insolvency Statute would have been repealed or substantially amended, for all of the time, attention and effort expended in drafting, considering and passing the Federal Tax Lien Act of 1966 will be fruitless, except in bankruptcy cases, if the Insolvency Statute is applied to preserve the super-priorities which the Federal Tax Lien Act of 1966 undertook to withdraw from tax claims. The question of priorities is wholly or largely academic, unless the debtor is insolvent, and the clearly stated purpose of the Federal Tax Lien Act of 1966 was to regulate the priority of federal tax claims when competing for payment out of the assets of an insolvent taxpayer with secured claims which would enjoy priority under state law.
The failure of Congress to deal specifically with the Insolvency Statute when amending the Federal tax lien statute leaves a lurking question arising out of United States v. Vermont, supra, [377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370] which suggests a definite independence between the two statutes and differences in their meaning and application. In Vermont, the opinion of the Supreme Court states that the taxpayer was solvent, though from the opinion in the Court of Appeals, it would appear that there was simply an absence of proof of insolvency, such proof being wholly unnecessary under the Federal tax lien statute, but its decision suggests that, when the tax payer is insolvent, the only probable occasion for litigation about *191 the matter, the Insolvency Statute should be applied without regard to the amended tax lien statute. * * *[1]
Without specific Congressional consideration of the Insolvency Statute or a fresh reconsideration of it by the Supreme Court, it remains an anachronism under which Federal claims are accorded greater priority when the distribution of the assets of an insolvent debtor is being effected under the Bankruptcy Act, under which Federal tax claims may be agreeably entitled to priorities which the Federal Tax Lien Act of 1966 would deny them, and under which other government claims, deferred to tax claims in bankruptcy, may be entitled to greater priority under a state regulated distribution of the insolvent's assets. [388 F. 2d at 161-162]
The court is faced with the task of probing the murky depths of a complex conundrum; to drag out and make manifest what if anything is left of the Insolvency Statute after enactment of the Federal Tax Lien Act of 1966. In approaching this problem this court is mindful of the liberal construction to be accorded R.S. 3466, 31 U.S.C.A., § 191. As the Supreme Court stated in United States v. Key, 397 U.S. 322, 90 S.Ct. 1049, 25 L.Ed.2d 340 (1970):
In approaching a claim of an implied exception to § 3466, we start with the principle, noted above, that the statute must be given a liberal construction consonant within the public policy underlying it. Applying that principle to an earlier claim that a statutory scheme implicitly excluded § 3466, this Court held that "(o)nly the plainest inconsistency would warrant our finding an implied exception to the operation of so clear a command as that of § 3466." United States v. Emory, 314 U.S. 423, 433; 62 S.Ct. 317, 322-323; 86 L.Ed. 315 (1941). [at 324-325, 90 S.Ct. at 1051] *192 However, this court believes, after reading and considering thoroughly the language and intent of R.S. 3466, 31 U.S.C.A. § 191, and the Federal Tax Lien Act of 1966, especially 26 U.S.C.A., § 6323(a), that there exists a "plain inconsistency" between the two, which inconsistency warrants, in the court's opinion, the finding that 26 U.S.C.A., § 6323, is an implied exception to the operation of R.S. 3466, 31 U.S.C.A. § 191. To hold otherwise would render nugatory, using Judge Haynsworth's words, "all the time, attention and effort expended in drafting, considering and passing the Federal Tax Lien Act of 1966" one of the purposes of which was to remove the super-priorities accorded tax claims. This court agrees with the decision reached by Chief Judge Nichol, in City of Vermillion v. Stan Houston Equipment Co., 341 F. Supp. 707 (S.D.S.D. 1972). There Judge Nichol unequivocally stated:
26 U.S.C.A. sec. 6323(a) was enacted long after 31 U.S.C.A. sec. 191 and is plainly inconsistent with it. Congress could not have intended any other purpose for 26 U.S.C.A. sec. 6323(a) than to give certain creditors priority over unfiled claims of the United States. Therefore, 31 U.S.C.A. sec. 191 does not... defeat the claim of the trustee in bankruptcy under 26 U.S.C.A. 6323(a). See In re Tennessee Central Ry., 316 F. Supp. 1103, 1106-1108 (M.D. Tenn. 1970).
Therefore, having found a "plain inconsistency" between R.S. 3466, 31 U.S.C.A. § 191, and 26 U.S.C.A. 6323, and having decided that such inconsistency warrants a finding that 26 U.S.C.A. § 6323, is an implied exception to R.S. 3466, 31 U.S.C.A. § 191, it remains to determine the priorities of the claims of the respective movants under 26 U.S.C.A., § 6321 et seq. Consistent with this holding, this court finds it unnecessary to make a fact finding as to the insolvency of Roto American Corporation, defendant-mortgagor in this foreclosure action.
*193 PRIORITIES UNDER 26 U.S.C.A., § 6321 et seq.
The Federal Tax Lien Act, 26 U.S.C.A., § 6321, provides:
If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.
The lien imposed by section 6321 arises at the time of the assessment. 26 U.S.C.A., § 6322. However, the priority of the federal tax lien is governed by 26 U.S.C.A. § 6323, which provides in pertinent part:
(a) Purchasers, holders of security interests, mechanic's lienors, and judgment lien creditors  The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate.
Subsection (f) of section 6323 provides in pertinent part:
(1) Place for filing.  The notice referred to in subsection (a) shall be filed 
(A) Under State laws. 

* * * * * * * *
(i) Real property.  In the case of real property, in one office within the State (or the county, or other governmental subdivision), as designated by the laws of such State, in which the property subject to the lien is situated; and * * *
(2) Situs of property subject to lien.  For purposes of paragraph (1), property shall be deemed to be situated 
(A) Real property.  In the case of real property, at its physical location; or * * *.
From the foregoing statutory provisions it is abundantly clear that the relevant dates for determining the priority of the federal tax liens in the instant proceeding vis-a-vis the *194 other claims are the dates of their recordation in the Bergen County Clerk's office. These dates, as aforementioned, are as follows:

 (a) 6-20-68
 (b) 7-19-68
 (c) 10-11-68
 (d) 10-11-68
 (e) 2-18-69
 (f) 9-3-69

In accordance with 26 U.S.C.A., § 6323(a), the federal tax liens are not valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor, until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate. Consequently, if any of the movants' claims are of a nature as described in 26 U.S.C.A., § 6323(a), and were established and effective prior to the previously mentioned dates of recordation of the federal tax liens, then such claims are entitled to and shall be awarded priority over those recorded federal tax lien claims which they predate.
The court is aware of the fact that one of the purposes of the Federal Tax Lien Act of 1966, Public Law 89-719, was apparently to eliminate or at least emasculate the importance of the concept of choate liens. The introductory statement to the act of the Senate Finance Committee states:
[V]arious types of secured creditor interests already having, or given, priority status over tax liens are specifically defined, and it is provided that where those interests qualify under the definitions they are to be accorded this priority status whether or not they are in all other respects definite and complete at the time notice of the tax lien is filed. C.C.H. Standard Federal Tax Reports, No. 4 (1966) at 69; [Emphasis added]
Accordingly, the test would seem to be one of whether the lien satisfies the definition of a protected interest under section 6323, and not whether the lien is "choate" or "inchoate". However, in the instant proceeding this court will apply the choate-inchoate test since it seems to remain as an issue, at *195 least as far as one of its constituent requirements, identity of the property, is concerned, in 26 U.S.C.A., § 6323(h) (1), which speaks of the requirement that the property "is in existence." See Continental Finance, Inc. v. Cambridge Lee Metal Co., Inc., 100 N.J. Super. 327, 337 (Law Div. 1968), aff'd 56 N.J. 148 (1970).
Before beginning an analysis of each claim, it is important to set forth two controlling principles of law which determine whether a claim is to be accorded priority over a recorded federal tax lien. The first is the concept previously discussed, "choateness." A state created lien is choate "when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." United States v. New Britain, 347 U.S. 81, 84; 74 S.Ct. 367, 369; 98 L.Ed. 520 (1954); Avco Delta Corporation Canada Ltd. v. United States, 459 F.2d 436 (7 Cir.1972). The second is that under the codified common-law rule of "the first in time is the first in right," a choate state-created lien takes priority over later federal tax liens. United States v. Pioneer American Ins. Co., 374 U.S. 84, 87-88; 83 S.Ct. 1651, 1654, 10 L.Ed.2d 770 (1963); Avco Delta Corporation Canada Ltd. v. United States, supra.
It is this aforementioned test of "choateness" which this court will apply to the claims of the movants asserting priority over the federal tax liens. Those claims which meet the test and are prior in time to the date of recordation of the various federal tax liens will be afforded priority over such tax liens, and satisfied first out of the surplus monies on deposit as a result of the forecloure action and sale.

II. CARDINAL BAG & ENVELOPE CO., INC.

The basis of the claim of Cardinal to the surplus monies is a judgment docketed J-193-67 and dated September 11, 1967 in the amount of $6,091.50, which figure includes accrued interest to September 11, 1971, against defendant Roto. It can be noted at the outset that this judgment is *196 prior in time to the recordation of any of the federal tax liens under consideration herein; prior to the date of the judgment of Decorators, as well as being prior to the date of the recordation of the deed from Roto to Leeds, the basis of the claim of Holobeam. It is clear, then, that Cardinal is "first in time."
To achieve priority over a federal tax lien it is necessary, under the "choateness" concept, that a state-created lien be such that "the identity of the lienor, the property subject to the lien, and the amount of the lien are established." United States v. New Britain, supra; Avco Delta Corporation Canada Ltd. v. United States, supra. The judgment of the movant, Cardinal, in the opinion of this court meets the requirements of the test of choateness. The identity of the lienor is established, as is the amount of the lien. The only remaining issue presented by this lien respects its attachment to specific property, i.e., the establishment of "the property subject to the lien."
This court finds controlling the decision In re Fornabai, 227 F. Supp. 928 (D.N.J. 1964), wherein it was, among other things, held that
A judgment entered in the Superior Court of New Jersey is a lien upon all real estate within the jurisdiction of the Court from the date of entry thereof, N.J.S.A. 2A:16-1; Venetsky v. West Essex Building Supply Co., supra. [28 N.J. Super. 178] The judgment creates the substantive right of lien, not the writ of execution. [at 932]
and concluded that levy and execution were not necessary to establish "the property subject to the lien" within the meaning of the test of choateness. Consequently, the claim of Cardinal being first in time and choate in the federal sense, it is entitled to priority over the federal tax liens. Likewise, it is first in time and prior to the claims of both Holobeam and Decorators. Therefore, it should be first satisfied out of the surplus monies on deposit with the Clerk of the Superior Court resulting from the foreclosure sale.
*197 It is contended by the U.S. that Cardinal waived the rights to its portion of the surplus monies by participating and receiving a dividend in the chapter XI bankruptcy proceedings involving Roto. This court is constrained to disagree.
Normally, bankruptcy does not destroy the lien of a judgment. As stated in Kobrin v. Drazin, 97 N.J. Eq. 400 (Ch. Div. 1925),
None of the liens of the judgments was, of course, affected by the discharge in bankruptcy of the judgment debtors. The discharge relieved them of personal liability only; the liens on the land remained. Bassett v. Thackara, 72 N.J. Law 81. [at 401-402]
Furthermore, it is important to note that since the claim of Cardinal, that it set forth its security in its proof of claim in bankruptcy, is uncontroverted, there is present no issue of waiver of its security by failure to mention its security in its proof of claim as discussed in Bassett v. Thackara, 72 N.J.L. 81 (Sup. Ct. 1905). Additionally, as stated in United States National Bank v. Chase National Bank, 331 U.S. 28, 67 S.Ct. 1041, 91 L.Ed. 1320 (1946),
The fact that the judgment lien creditors received general dividends contrary to the scheme of § 57(h) does not necessarily mean that they thereby waived their lien. Nothing in the language of § 57(h) or of any other section of the Act makes such a receipt the necessary equivalent of a waiver. It is generally true that participation by a secured creditor in distributions from the general assets on the basis of his full claim indicates a waiver of the security and an election to be treated as an unsecured creditor. See In re O'Gara Coal Co., 7 Cir., 12 F. 2d 426. But that is not an invariable result flowing from the application of any rigid statutory rule. The result depends, rather, upon the circumstances surrounding the receipt of the dividends. And in exceptional cases those circumstances may demonstrate the continued vitality of the security as well as indicate that it would be inequitable to declare the security forfeited. See Wuerpel v. Commercial Germania Trust & Savings Bank, 5 Cir., 238 F. 269; Maxwell v. McDaniels, 4 Cir., 195 F. 426; Hartford Accident & Indemnity Co. v. Coggin, 4 Cir., 78 F.2d 471; Standard Oil Co. v. Hawkins, 7 Cir., 74 F. 395.
*198 The circumstances of the instant proceeding, involving as they do a foreclosure sale outside of the estate of the bankrupt, and the sale itself creating surplus funds which are not a bankruptcy asset and therefore unaffected by a waiver in any event (see 9 Am. Jur.2d Bankruptcy, § 478 at 370 (1963)), and since it appears that the trustee in bankruptcy has abandoned the property in question, this court finds that judgment lien creditor, Cardinal, did not intend, by participating in the chapter XI proceedings, to waive its lien, and did not undertake any positive act to waive its security. Therefore, since a forfeiture of the lien of Cardinal would only penalize this judgment lien creditor, who joined the plan in good faith and without any apparent intention of harming others or of securing any undue advantage for itself, this court, mindful of the equities involved, finds that participation by Cardinal in the chapter XI proceedings and receipt by it of a dividend did not constitute a waiver of its lien and right to a portion of the foreclosure surplus monies.
The issue of the nullity of the judgment of Cardinal as one obtained within four months of the filing of a petition in bankruptcy under section 67(a) (1), 11 U.S.C.A. § 107, remains to be considered. It has long been held by the courts of this State that the nullity of a judgment obtained within four months of the filing of a petition in bankruptcy is not the result of some self-executing feature of section 67(a) (1), 11 U.S.C.A. § 107, but requires an affirmative act on the part of the trustee in bankruptcy to set the judgment aside. In Kobrin v. Drazin, 97 N.J. Eq. 400 (Ch. 1925), the court in refusing to sustain a refusal to accept title because of judgments against the bankrupt landowner, some of which were obtained within four months of his bankruptcy, held:
a trustee may abandon property when it is valueless as an asset of the bankrupt estate, whereupon the title reverts to or remains in the bankrupt. [at 97, 401]
*199 The court further held that:
None of the liens of the judgments was, of course, affected by the discharge in bankruptcy of the judgment debtors. The discharge relieved them of personal liability only; the liens on the land remained. Bassett v. Thackara, 72 N.J.L. 81 (1905) [at 401-402]
Additional support for the conclusion that a judgment obtained within four months of the filing of a petition in bankruptcy is not automatically void under section 67(a) (1), 11 U.S.C.A., § 107, is provided by Kruger v. Harber Realty Corp., 11 N.J. Super. 552, 555 (Ch. Div. 1951). There, too, the court held that a judgment obtained within four months of the filing of a petition in bankruptcy remained viable, absent some affirmative act by the trustee to void the lien. See also Fisher v. Pauline Oil & Gas Co., 309 U.S. 294, 60 S.Ct. 535, 84 L.Ed. 764 (1940).
In light of the foregoing authority, this court holds that the mere fact that Cardinal obtained its judgment within four months of the filing of a petition in bankruptcy did not result in the voidance of the judgment upon discharge of the bankrupt. An affirmative act on the part of the trustee in bankruptcy was necessary and required to void this lien, especially since it was one attaching to the real property of the debtor, which property was abandoned by the trustee and remained outside of the bankrupt's estate. Since no affirmative action was taken to void the lien, it remains viable and effective.
In fine, the judgment lien of Cardinal fits the definitional scheme of 26 U.S.C.A., § 6323(a), is first in time, choate, perfected and viable. Since there was no waiver by Cardinal, as previously discussed, it is entitled to first priority and shall satisfy its lien out of the surplus monies on deposit as a result of the foreclosure sale.

III. UNITED CONVENTION DECORATORS, INC.

The basis of thec laim of Decorators to the surplus monies is a judgment docketed as J-13,040-67 (L-3020267), dated *200 June 17, 1968, against defendants Roto, in the amount of $1,986.05, which amount includes accrued interest to September 17, 1971, together with costs of $80.75.
The claim of Decorators is of the same type as that of Cardinal. Decorators is a judgment lien creditor within 26 U.S.C.A. § 6323(a). Its lien, this court finds, is choate in the federal sense, for the same reasons expressed in the discussion of the choateness of the lien of Cardinal and in In re Fornabai, 227 F. Supp. 928 (D.N.J. 1964). Therefore, it is to be accorded priority over any liens effective subsequent to June 17, 1968, the date of the docketing of the judgment. Consequently, it is prior to all the federal tax liens under consideration herein, the earliest of which was recorded June 20, 1968. Likewise, it is prior to the lien of Holobeam, which lien was effective October 10, 1968. It will then be satisfied out of the surplus on deposit before all of these aforementioned liens.

IV. HOLOBEAM SECURITIES SYSTEMS, INC.

Holobeam bases its claim on an assignment dated December 7, 1970 to it from Leeds of all of Leeds' rights in and to any claims or liens against Roto. (See affidavit of Wilfred N. Diller submitted with notice of cross-motion ("Diller affiravit"), at paragraph 2).
The lien and claim held by Leeds upon which this claim is based arose out of a contract for sale of the Winters Avenue premises between Leeds and Roto. Said contract was never fulfilled by Roto, and Leeds eventually brought suit for damages on the basis of that contract. (See affidavit of Melvin D. Newman submitted with Notice of Cross-Motion ("Newman affidavit"), at paragraph 3(e).
The history leading to the suit on the contract and the failure of Roto to honor it is recounted in detail in the Newman affidavit. Essentially Roto failed to honor the contract by not taking steps to discharge all liens and encumbrances subsequent to the Prudential first mortgage, and *201 by not securing consent of two-thirds of its shareholders to the sale. The closing of the sale was postponed twice, and on October 7, 1968 the parties met to close title. On October 7, 1968 Roto had not as yet met its conditions of contract; instead, the parties agreed to an arrangement. (Newman affidavit, paragraph 3(d)). As a result of that agreement the following documents were executed and delivered:
(a) a deed from Roto to Leeds
(b) a purchase money mortgage from Leeds to Roto
(c) a leaseback from Leeds to Roto
(d) an assignment of the mortgage from Roto to Leeds as security for performance of agreement on the part of Roto.
The parties also provided for liquidated damages of $50,000 if Roto failed to secure shareholder consent to the sale by October 21, 1968. All of said documents executed on October 7, 1968 were recorded in the office of the Clerk of Bergen County on October 10, 1968. Also executed at that time was a deed back from Leeds to Roto, which deed was delivered to the escrow agent.[2]
Suit against Roto was brought by Leeds on December 19, 1968 as a result of Roto's failure to comply with the October 7, 1968 agreement. That suit was settled by an agreement dated February 19, 1969. The settlement provided that if Roto would pay Leeds $40,000 on or before March 5, 1969, Leeds would dismiss the suit, rescind the contract of sale and reconvey title to the real estate to Roto. Said sum of $40,000 has never been paid by Roto. (Newman affidavit, paragraph 3(d) and (e)). It is this sum which Holobeam seeks to recover out of the surplus monies on deposit as a result of the foreclosure sale.
*202 There are numerous authorities for the proposition that an absolute conveyance intended as security for an obligation will be treated as a mortgage. See, e.g., Brodzinsky v. Pulek, 75 N.J. Super. 40, 47-48 (App. Div.) certif. den. 38 N.J. 304 (1969); Welsh v. Griffith-Prideaux, Inc., 60 N.J. Super. 199 (App. Div. 1969); Antonucci v. Gravina, 134 N.J. Eq. 79, 81 (Ch. 1943); Papsco v. Novak, 94 N J. Eq. 642, 644 (Ch. 1923). In Vreeland v. Dawson, 55 N.J. Super. 456 (Ch. Div. 1959), the court declared:
The rule is firmly established that a deed absolute on its face intended only as security for a loan will be decreed to be operative as a mortgage. Equity will look beyond the written instrument and explore the character of the transaction and the contemporaneous intentions of the parties. [at 465]
The doctrine that an absolute conveyance may be treated as a mortgage was fully discussed in J.W. Pierson Co. v. Freeman, 113 N.J. Eq. 268 (E. & A. 1933), where the court declared:
The term "mortgage" has a technical significance in the law. It imports a defeasance and an equity of redemption. The transfer of title must be made to secure the payment of a debt, or the performance of a duty, and the right of redemption must exist in the mortgagor. Clinton Hill Lumber and Manufacturing Co. v. Strieby, 52 N.J. Eq. 576; Wilbur v. Jones; 80 N.J. Eq. 520; Peugh v. Davis, 96 U.S. 332, 336; 24 L.Ed. 775.
If a transaction resolves itself into a security, whatever may be its form and whatever name the parties may choose to give it, it is, in equity, a mortgage. If a deed or contract, lacking the characteristics of a common-law mortgage, is used for the purpose of pledging real property, or some interest therein, as security for a debt or obligation, and with the intention that it shall have effect as a mortgage, equity will give effect to the intention of the parties. Such is an equitable mortgage. Cummings v. Jackson, 55 N.J. Eq. 805, 809; Peugh v. Davis, supra. To prevent undue advantage through inadequacy of consideration, courts of equity are steadfast in holding that a conveyance, whatever its form, if in fact given to secure a debt, is neither an absolute nor conditional sale, but a mortgage, and that the grantor and grantee have merely the rights, and are subject only to the obligations, of the mortgagor and mortgagee. Mooney v. Byrne, 163 N.Y. 86; 57 N.E. 163. The character of the instrument is determined by the intention of the parties at the time of its execution. Frink v. Adams, 36 N.J. Eq. 485; Doughty v. Miller, *203 50 N.J. Eq. 529; Guilford-Chester Water Co. v. Guilford, 107 Conn. 519, 141A. 880; 19 R.C.L. 266. While it is true that it does not require express words to create an equitable mortgage, where the intention to create such a lien is evident, yet it must clearly appear from the instrument or the surrounding circumstances, at the time of entering into the same, that the maker of the instrument intended that the property therein described is to be held, given or transferred as security for the obligation. Monagas v. Albertucci, 235 U.S. 81; 35 S.Ct. 95; 59 L.Ed. 139; New Orleans National Banking Association v. Adams, 109 U.S. 211; 3 S.Ct. 161; 27 L.Ed. 910; Hibernian Banking Association v. Davis, 295 Ill. 537; 129 N.E. 540. An equitable mortgage, therefore, is created by the agreement of the parties. [at 270-271]
In the opinion of this court it is abundantly clear that Leeds and Roto intended the deed which was recorded to be a mortgage and thus it may be treated as such for all purposes in accordance with the cited authorities. The closing of the sale was to take place on October 7, 1968 after two prior suspensions. Yet, when the parties met to close Roto had failed to remove all liens subsequent to that of Prudential and had failed to secure a shareholder consent. The deed to Leeds, the purchase money mortgage back to Roto, and the leaseback to Roto had already been prepared for execution and delivery. Thus, the parties negotiated an agreement pursuant to which they agreed, as follows:
(1) All of such prepared documents would be executed;
(2) Leeds' damages for the failure to convey were $50,000.
(3) Leeds would deliver the purchase price in escrow.
(4) Roto would have to secure shareholder consent by October 21, 1968.
(5) If Roto failed to secure shareholder consent by October 21, 1968, then Leeds would reconvey the property to Roto upon payment of the amount of $50,000.
Thus it can be seen that the deed which was already prepared was given on October 7, 1968 only to secure the liquidated damages which the parties agreed was owed by Roto to Leeds.
*204 Two facts clearly demonstrate that the parties intended the deed to be a mortgage. First, Leeds executed a deed of reconveyance and delivered it in escrow so that the escrow agent could deliver it to Roto upon payment of the liquidated damages. Certainly this simultaneous deed of reconveyance amounts to the same thing as the conventional mortgage defeasance clause. A contemporaneous agreement to reconvey has always been given great weight in concluding that the parties intended a mortgage. See, e.g., Vanderhaise v. Hugues, 13 N.J. Eq. 410 (Ch. 1861); Cornell v. Pierson, 8 N.J. Eq. 478 (Ch. 1850); 59 C.J.S. Mortgages § 24. In this case, we not only have a subsequent agreement to reconvey but an actual reconveyance delivered in escrow.
Secondly, the value of the property was significantly greater than the $50,000 obligation for which the deed was given as security. In fact, the parties had agreed on a purchase price of $700,000. In Welsh v. Griffith-Prideaux, supra, 60 N.J. Super. at 209, the court declared that "The fact that the value of the property taken is greater than the sum advanced by a grantee is a circumstance pointing to a mortgage arrangement."
Based on the foregoing authority this court finds that the deed from Roto to Leeds, recorded on October 10, 1968, was in fact a mortgage to secure the liquidated obligations in the amount of $50,000 from Roto to Leeds.
Before applying the test of "choateness" in the federal sense to the claim of Holobeam, the court must consider 26 U.S.C.A., § 6323(a), to determine if this claim fits the definitional scheme of that section. Section 6323 provides, in pertinent part, that
The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor * * *.
The term "security interest" is defined in section 6323(h) (1) as follows:
*205 The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.
Applying the definition to the claim of Holobeam the court finds that the property was in existence and that the equitable mortgage held by Holobeam was protected under New Jersey law against a subsequent judgment lien. N.J.S.A. 46:17-3.1; N.J.S.A. 46:22-1. Further, the court finds that at the time at which its lien was recorded, Leeds had already parted with money's worth, i e., forebearance to sue which the parties valued at $50,000 in an arm's-length agreement. Consequently, the claim of Holobeam fits the definitional scheme of 26 U.S.C.A., § 6323(a) and (h) (1), and is therefore a protected interest within that statutory section.
I note parenthetically that the claim of Holobeam would probably be entitled to priority over the federal tax liens even if 26 U.S.C.A., § 6323, were not considered to be an implied exception to R.S. 3466, 31 U.S.C.A. § 191, since the property had, after conveyance, been effectively removed from the debtor's possession. See United States v. Gilbert Associates, Inc., 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (1953); New York v. Maclay, 288 U.S. 290, 53 S.Ct. 323, 77 L.Ed. 754 (1933).
It remains now to determine the question of the choateness of the claim of Holobeam. Since the substance of the claim and not its nomenclature is the important factor for purposes of this test, it matters not whether we call it an equitable mortgage or a security interest. A finding of choateness will apply to both.
As has been stated previously, a state-created lien is choate "when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." United States v. New Britain, 347 U.S. 81, 84, 74 S.Ct. *206 367, 369, 98 L.Ed. 520 (1954); Avco-Delta Corporation Canada Ltd. v. United States, 459 F.2d 436 (7 Cir.1972). In United States v. New Britain, the court declared:
The liens (competing with those of the United States) may also be perfected when there is nothing more to be done to have a choate lien  when the identity of the lienor, the property subject to the lien, and the amount of the lien are established.
See also United States v. Equitable Life Assur. Soc., 384 U.S. 323, 86 S.Ct. 1561, 16 L.Ed.2d 593 (1966).
An analysis of the claim leads this court to the conclusion that the identity of the lienor and the property subject to the lien were clearly established by the deed recorded on October 10, 1968. It remains now to consider the issue of whether or not the amount of the lien was established by the various documents and agreements constituting the basis for the claim of Holobeam.
At the closing the parties decided that the amount of damages sustained by Leeds as a result of the failure of the conveyance was $50,000. Accordingly, they caused the preparation of an escrow agreement which provided, among other things, in paragraph 6:
If Roto for any reason whatsoever fails to duly convene a meeting of its shareholders and obtain the required consent to the sale of the premises to Leeds and deliver the aforesaid certificates of such consent by October 21, 1968, the parties acknowledge that Leeds will sustain damages the amount and extent of which, although considerable, are not readily ascertainable. In such event Roto agrees to pay to Leeds the sum of $50,000. as liquidated damages and not as a penalty.
That paragraph continued to provide that Leeds would grant Roto extensions of time to secure said shareholders' consent and also accorded Leeds the right to retain the premises in lieu of liquidated damages.
In paragraph 8 of the agreement it was provided that $25,000 would be deposited by Roto with Roto's attorneys, *207 Frutkin and Frutkin, "on account of the liquidated damages which Roto may be required to pay to Leeds hereunder."
That escrow agreement, prepared and agreed upon by the parties, was supplemented by a handwritten agreement also dated October 7, 1968, which recited that it "shall constitute an amendment to the agreement of October 7, 1968, and May 7, 1968 (the original contract of sale) between Roto American Corporation (Roto) and Leeds Department Stores (Leeds) relative to 560 Winters Avenue, Paramus, New Jersey (Premises)." There is no question in the court's mind but that the parties consistently believed and treated the escrow agreement as valid and binding upon them.
Accordingly, it appears to the court that the deed from Roto to Leeds was given to secure the liquidated sum of $50,000 which the parties agreed was the amount of damages sustained by Leeds. That sum was established and certain as of the recording date and was thus "choate." Nothing more had to be done after October 7, 1968, or for that matter after October 10, 1968, the date of recording, to ascertain the sum for which the deed was given as security.
The liquidated obligation was subject only to certain conditions subsequent. The liquidated obligation could have been eliminated if Roto produced the shareholder consents within the required time, and Leeds had the option to take title and forego the liquidated damages. The occurrence of neither of the above-mentioned subsequent events were necessary to the creation of the sum certain. Rather, they could have had the result of only eliminating the obligation. Such an obligation appears to be no different than the obligation of a promissory note which could be reduced or eliminated by subsequent payments. And there has never been any doubt that a mortgage to secure a promissory note, which could be reduced or eliminated subsequent to the recording of the mortgage, is a fixed amount and thus a "choate" obligation. See, e.g., Newark Steel Warehouse, Inc. v. Pearl Metal Products, Inc. 78 N.J. Super. 335 (Ch. Div. 1962).
*208 The U.S. argues that the deed recited a consideration other than the $40,000 which Holobeam seeks as a disbursement. Yet, this court feels that the amount recited in the recorded instrument is actually irrelevant. This was recognized by the Ninth Circuit in Hoare v. United States, 294 F.2d 823 (1961), where the court, in discussing whether a lien was choate, declared:
It is immaterial that the amount due was not then (at the time when the notice of the Federal tax lien was filed) known to the Government or to third parties generally. This is ordinarily the case where, for example, a mortgage is given to secure payment of an installment note.
The fact that Leeds and Roto entered into a settlement reducing to $40,000 the amount for which the deed was given as security is relevant only to the extent that it redounds to the benefit of the U.S. by reducing Leeds' (and hence Holobeam's) priority by $10,000. At the time of the recording of the deed the obligation was fixed and the later reduction of that obligation has no effect on determining the issue of priority.
The claim of Holobeam is, therefore, choate and entitled to priority over the recorded federal tax liens involved herein, which were recorded subsequent to the recordation date of the deed from Roto to Leeds, to wit, October 10, 1968, under the "first in time first in right" rule as well as under 26 U.S.C.A., § 6323(a).
The U.S. contends that the conveyance of the premises herein to Leeds on October 7, 1968 was a fraudulent conveyance within N.J.S.A. 25:2-3. This contention is devoid of merit. Since it is clear that a prior debt may serve as fair consideration for a later conveyance, N.J.S.A. 25:2-9, the conveyance made by Roto to secure its obligation for its breach of contract to Holobeam was, in the opinion of this court, not fraudulent. As stated in Schwartz v. Battifarano, 2 N.J. 478 (1949):
*209 If a fair consideration is provided, however, it will support the conveyance even though made at a time when the grantor was insolvent. In Hersh v. Levinson Bros., Inc., 117 N.J. Eq. 131 (E. & A. 1934), the court, reversing a decree which set aside a chattel mortgage as fraudulent, said: "That the indebtedness existed is not questioned. But it is said that a pre-existing indebtedness is insufficient, and that a present consideration is necessary to support the mortgage. This is not the law. The pre-existing indebtedness, standing alone was unquestionably sufficient. It is well settled that it is the right of a debtor who is in failing circumstances or insolvent to prefer one of his creditors; and it is equally the right of the creditor, acting honestly and in good faith, to obtain security for the debt from his debtor, or to extinguish the debt by purchasing property of the debtor which is of the same value as the credit surrendered." [at 484-485]
The case of United States v. Plastic Electro Finishing Corporation, 313 F. Supp. 330 (E.D.N.Y. 1970), relied on by the U.S., is distinguishable from the instant situation since the transaction involved in that case was devoid of arm's-length bargaining. In the instant transaction the parties bargained and arrived at the conclusion that the premises would be conveyed to secure the liquidated damages for the breach of the contract of sale.
Finally, the U.S. argues that the escrow agreement executed by Leeds and Roto on October 7, 1968 was void under the statute of frauds, N.J.S.A. 25:1-5. The court finds this argument to be without merit.
In Zwaska v. Irwin, 52 N.J. Super. 27 (Ch. Div. 1958), the court held that the United States, which was trying to assert its prior position by virtue of recorded tax liens, could not raise the statute of frauds. There, title was vested in one party against whom the United States recorded tax liens. Two other parties claimed that the debtor held the property in a constructive trust for himself and them. The court declared:
While the federal tax assessments against Irwin have the force and effect of a judgment, the Statute of Frauds was enacted for the protection of the party sought to be charged, and is not available to strangers to the agreement. McCue v. Deppert, 21 N.J. Super. 591 (App. Div. 1952). The Government as a judgment creditor is a *210 stranger within the meaning of this rule and cannot set up the Statute of Frauds to prevent the execution, by its debtor, of an oral executory contract if the latter is willing to perform. [at 33; emphasis added]
Additionally, the executed handwritten agreement, dated October 7, 1968, between Roto and Leeds provides that "it shall constitute an amendment" to the escrow agreement. Since the escrow agreement was thereby referred to in an executed instrument as a binding obligation, there was a sufficient memorandum to remove the escrow agreement from the statute of frauds. In Hardy v. Hangen, 134 N.J. Eq. 176, 181 (Ch. 1943), the court declared that a binding contract may be gathered from separate writings where "the writings are so interrelated that they may be fairly considered to constitute collectively the material and essential elements of the final bargain." In Becker v. Kelsey, 9 N.J. Misc. 1265 (Sup. Ct. 1265), the court declared:
It is well settled that the fifth section of the Statute of Frauds (2 Comp. Stat. p. 2612) is sufficiently complied with if the agreement is contained in several papers provided that the paper which is signed refers to the others in such a way that they may be identified by parole, if the intention that the papers are to be read together appears upon the face of the paper which is properly signed. [at 1284]
In fine, the lien of Holobeam is choate in the federal sense and prior in time to the federal tax liens recorded on October 11, 1968 (two), February 18, 1969 and September 3, 1969. It shall, therefore, be fully satisfied, if the surplus permits, before the remaining federal tax liens begin to share in the surplus monies.

CONCLUSION
The order of priority of claims of the movants and the amounts to be paid them out of the surplus of $126,471.99 are as follows:

*211 (1) Cardinal  Claim to be satisfied in full  $6,091.50 plus interest computed from September 11, 1971.
(2) United Convention Decorators  Claim to be satisfied in full  $1,986.05 plus interest from September 17, 1971.
(3) United States of America  Claim to be satisfied in full  $48,524.86 plus interest from November 5, 1971.
(4) United States of American  Claim to be satisfied in full  $36,566.69 plus interest from November 5, 1971.
(5) Holobeam  The balance of the surplus fund on a claim of $40.000.
NOTES
[1] Judge Haynsworth stated that he could not say that the Federal Tax Lien Act of 1966 by implication repealed the Insolvency Statute entirely so as to be inapplicable to a contract claim, or so modified it as to accommodate the priorities which would be recognized if the distribution were being effected by a court in bankruptcy. He also cited the urgent need for Congressional attention to the Insolvency Statute, so that what, if anything, was intended to be left of it may be made manifest.
[2] Actually there were two deeds conveying the parcels that make up the premises known as 560 Winters Avenue, Paramus, New Jersey, but for ease of reference said deeds shall be referred to in the singular herein. There were also two deeds of reconveyance.